June B. GUNTER, Plaintiff,

v.

MERCHANTS WARREN NATIONAL BANK et al., Defendants.

LAKE ARROWHEAD ESTATES, INC. and Leisure Living Communities, Inc., Plaintiffs,

v.

Russell P. and Rebecca H. CUMMING et al., Defendants.

Civ. Nos. 13–117, 14–20.

United States District Court, D. Maine, S. D.

June 25, 1973.

---

Thomas A. Cox, David M. Cohen, Portland, Me., for plaintiffs.

Roger S. Elliott, Saco, Me., for all individual defendants.

Roland A. Cole, Wells, Me., for County officials.

Matthew S. Goldfarb, Portland, Me., for bank.

David C. Pomeroy, Asst. County Atty., Portland, Me., for Sharpe.

Martin L. Wilk, Asst. Atty. Gen., Augusta, Me., for Caron.

Before COFFIN, Chief Judge, GIGNOUX and BOWNES, District Judges.

## OPINION

GIGNOUX, District Judge.

These two cases present the identical question of whether the provisions of Chapter 507 of Title 14, M.R.S.A. (14 M.R.S.A. § 4451 et seq.) and Rule 4A of the Maine Rules of Civil Procedure, insofar as they permit the prejudgment attachment of real estate without prior notice and hearing, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs have brought the actions under the Civil Rights Act, 42 U.S.C. § 1983, seeking injunctive relief, damages, and a declaratory judgment pursuant to 28 U.S.C. § 2201.[1] Jurisdiction is properly invoked under 28 U.S.C. § 1343(3), and the relevant facts have been stipulated. In both cases, the same three-judge district court has been convened pursuant to 28 U.S.C. §§ 2281 and 2284 to consider the plaintiffs' challenge to the constitutional validity of the Maine statute and rule.

The provisions of Maine law here attacked permit the attachment of real property of a defendant in a civil action to satisfy any judgment that may be recovered by the plaintiff. 14 M.R.S.A. § 4451.[2] Under the Maine practice, the plaintiff's attorney obtains from the clerk of courts a blank writ of attachment bearing the signature or facsimile signature of the clerk; the attorney then fills out the writ and delivers it to the officer making the attachment. Me.R.Civ.P. 4A(b) and (c).[3] The attachment is made by a sheriff or other authorized officer completing the "return" on the reverse side of the writ and filing an attested copy of his return in

---

1. The parties have agreed that any determination of damages await disposition of plaintiffs' claims for declaratory and injunctive relief.

2. Section 4451 provides in relevant part:

    All real estate liable to be taken on execution . . . and all other rights and interests in real estate may be attached on mesne process and held to satisfy the judgment recovered by the plaintiff, but the officers need not enter on or view the estate to make such attachment.

3. Rule 4A(b) and (c) provide in pertinent part:

    (b) *Writ of Attachment: Form.* The writ of attachment shall bear the signature or facsimile signature of the clerk, be under the seal of the court, contain the name of the court, the names and residences of the parties and the date of the complaint, be directed to the sheriffs of the several counties or their deputies, and command them to attach the goods or estate of the defendant to the value of the amount of plaintiff's demand for judgment, together with a reasonable allowance for interest and costs, and to make due return of the writ with their doings thereon. . . .

the registry of deeds in the county in which the real estate is located. 14 M.R.S.A. § 4454. No provision is made for notice to the defendant or for opportunity for the defendant to be heard *before* the attachment is made.[4] An amendment to Rule 4A, effective January 1, 1973, now permits a defendant, "[o]n 2 days' notice to the plaintiff or on such shorter notice as the court may prescribe," to move for the dissolution or modification of the attachment, in which event the court is directed to hear and determine the motion "as expeditiously as the ends of justice require." Me.R.Civ.P. 4A(g).[5]

Plaintiff in No. 13–117, June B. Gunter, is the owner of approximately 50 acres of real property in the town of Standish, Cumberland County, Maine. On March 31, 1972, Merchants Warren National Bank of Salem effected an attachment of all Mrs. Gunter's real estate located in Cumberland County to the value of $4,840. The attachment was incident to a civil action commenced by the Bank against Mrs. Gunter in a Maine District Court to recover a $4,820 balance alleged to be due on a promissory note. Mrs. Gunter received no prior notice of the attachment and had no prior opportunity to challenge it. As permitted by Maine law,[6] copies of the writ of attachment and of the summons and complaint were not served on her until four days after the attachment, and the complaint was not filed with the Court until 15 days thereafter. She instituted her present action on August 4, 1972. Named as defendants are the Bank, the sheriff who made the attachment, and the Clerk of the Maine District Court from which the writ issued.[7]

Plaintiff Lake Arrowhead Estates, Inc. in No. 14–20 is the owner of a 2250-acre recreational real estate development in the towns of Limerick and North Waterboro, York County, Maine.[8] On February 26, 1973, six purchasers of individual lots from plaintiff's development effected an attachment of its real property in York County to the value of $330,000. The attachment was incident to a civil action filed in the York County

---

(c) *Same: Service.* The writ of attachment may be procured in blank from the clerk and shall be filled out by the plaintiff's attorney as provided in subdivision (b) of this rule. The plaintiff's attorney shall deliver to the officer making the attachment the original writ of attachment upon which to make his return and a copy thereof.

\* \* \* \* \*

4. Under Maine practice, a civil action may be commenced either by filing a complaint with the court, or by serving a summons and complaint directly upon the defendant, in which case the complaint must be filed with the court within 20 days thereafter. Me.R.Civ.P. 3. An attachment may be made before or after the commencement of the action. If the attachment is made prior to commencement of the action, the complaint must be filed with the court within 30 days after the attachment. *Idem.* If the attachment occurs before service, a copy of the writ must be served along with the summons and complaint. Me.R.Civ.P. 4A(c). If the attachment occurs after service, a copy of the writ must be "promptly served upon the defendant." *Idem.*

5. Previous to January 1, 1973, a defendant could obtain the release of an attachment prior to termination of the action only upon the furnishing of a surety bond. 14 M.R.S.A. §§ 4606–07, 4613.

6. *See* note 4, *supra.*

7. In the fall of 1971, Mrs. Gunter had entered into a "Multiple Listing Service Agreement" with a local realtor relating to the sale of five lots from her Standish property. Subsequent to the commencement of the present action, purchasers for the five lots were found and Mrs. Gunter entered into sales contracts agreeing to convey the lots "free and clear of all encumbrances." She has since conveyed four of the lots to the purchasers. In order to effect these conveyances, she has obtained a discharge of the Bank's attachment by furnishing an attachment release bond secured by escrow of a $4800 savings account established for the purpose.

8. Leisure Living Communities, Inc., also a plaintiff in Civil 14–20, owns recreational real estate developments within the State of Maine, but not within York County. So far as the record discloses, it has no direct interest in this case.

Superior Court seeking $330,000 damages for alleged fraudulent misrepresentations in connection with the purchase of their lots. Plaintiff was provided no prior notice of the attachment or opportunity for hearing before the attachment was made. Service was not completed on plaintiff until nine days after the attachment, and the complaint was not filed with the court until the following day. The present action was filed in this Court on March 14, 1973, naming as defendants the plaintiffs in the state court action, the sheriff who made the attachment, the Clerk of the Superior Court which issued the writ, and the Register of Deeds in whose office the attachment was recorded.[9]

The constitutional issue presented is a narrow one. It is whether the failure of Maine law to afford a defendant an opportunity to be heard, *before* attachment of his real property, deprives the defendant of due process of law. We have concluded that fundamental principles of procedural due process, which have long been recognized by the Supreme Court and have most recently been reaffirmed by that Court in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972) make clear that, by denying the defendant any prior opportunity to be heard and to present any defense he may have to the plaintiff's claim, Maine's prejudgment attachment procedure cannot pass constitutional muster.

For over 100 years the controlling principles have been well established: "The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914); Baldwin v. Hale, 1 Wall.

(68 U.S.) 223, 233, 17 L.Ed. 531 (1864); Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Such hearing must be "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, *supra.* "[O]pportunity for that hearing must be provided *before* the deprivation at issue takes effect." *Fuentes, supra,* 407 U.S. at 82, 92 S.Ct. at 1995 (emphasis supplied). In a variety of contexts, the Supreme Court has been insistent that due process so requires. *E. g.,* Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970); Armstrong v. Manzo, *supra,* 380 U.S. at 551, 85 S.Ct. 1187; Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As the Court observed in *Fuentes,* "this is no new principle of constitutional law." *Fuentes, supra,* 407 U.S. at 82, 92 S.Ct. at 1995.

Judged by this standard, the procedure provided by Maine law fails to meet even the minimum demands of due process. The effect of the Maine law is to permit, at the option of the plaintiff, the immediate attachment, without opportunity to be heard, of the real property of the defendant, simply upon the plaintiff's unsubstantiated assertion that he has a meritorious claim for damages. *Cf. Fuentes, supra,* 407 U.S. at 83, 92 S. Ct. 1983. It may be that Rule 4A, as recently amended, permits the defendant, *after* he receives notice of the attachment, to obtain an expeditious dissolution or modification of the attachment. But Maine law still allows the defendant's property to be attached for a substantial period of time without his prior knowledge.[10] More fundamentally, op-

9. Prior to the attachment of its real estate, plaintiff had contracted for the sale of over 1800 lots from its development under installment contracts requiring conveyance of a clear title to the lots within 60 days after payment of the full purchase price. A temporary restraining order has issued directing release of the attachment as to those lots for which such contracts exist.

10. If the plaintiff commences his action by filing his complaint with the court, the Maine rules impose no time limit for the making of service on the defendant. *See* 1 Field, McKusick & Wroth, Maine

portunity for hearing after the event is no substitute for the right to a prior hearing "that is the only truly effective safeguard against arbitrary deprivation of property." *Idem.* In both *Sniadach* and *Fuentes,* the challenged statutes included provisions permitting the defendants to quickly recover the property taken from them.[11] Yet in both cases the Court held that the takings of property had to be preceded by notice and opportunity for hearing. Thus, it is of no consequence that the deprivation of an interest within the protection of the Fourteenth Amendment is temporary and not final. *Fuentes, supra,* 407 U.S. at 84–86, 92 S.Ct. 1983; *Sniadach, supra,* 395 U.S. at 343, 89 S.Ct. 1820 (Harlan, J., concurring); Bell v. Burson, *supra,* 402 U.S. at 536, 91 S.Ct. 1586.

These firmly settled principles underlie the Supreme Court's recent decisions in *Sniadach* and *Fuentes.* In *Sniadach,* the Court invalidated a state pretrial wage garnishment statute because it afforded a defendant neither notice nor an opportunity to be heard prior to the garnishment of his wages. In *Fuentes,* the Court invalidated for the same reasons two state statutes which provided for the replevin of personal property.[12] Defendants argue, however, that the holdings of *Sniadach* and *Fuentes* should not be extended to apply to real estate at-

tachments. They say, first, that an attachment of real estate, which effects only a temporary restriction on the owner's power of alienation, is not a "taking of property" protected by the Fourteenth Amendment. Second, they urge that even if there has been such a taking, the resulting deprivation is nevertheless so insignificant that in view of the state's interest in protecting creditors' rights, due process does not require prior notice and hearing.

It is clear, however, that both contentions were met and rejected by the Supreme Court in *Fuentes.* As to defendants' first point, the *Fuentes* court first laid to rest the notion that the requirements of due process are limited to the protection of only a few types of property interests. 407 U.S. at 88–90, 92 S.Ct. 1983. Rejecting a narrow reading of *Sniadach* and Goldberg v. Kelly, *supra,* which some lower courts had interpreted as requiring a prior hearing only with respect to the deprivation of such "absolute necessities" of life as wages and welfare benefits,[13] the Court went on to say:

[I]f the root principle of procedural due process is to be applied with objectivity, it cannot rest on such distinctions. The Fourteenth Amendment speaks of "property" generally. And, under our free-enterprise sys-

---

Civil Practice § 3.3 at 44 (2d ed. 1970). Since the rules only require that a copy of the writ of attachment be served when the summons and complaint are served, *see* note 4, *supra,* it is thus possible for a plaintiff to effect an attachment, file his complaint and delay service of both the complaint and the writ of attachment for an extended period of time.

11. Although not mentioned in the *Sniadach* majority opinion, there was a quick-recovery provision in the prejudgment garnishment statute at issue. *See Fuentes, supra,* 407 U.S. at 85, n. 15, 92 S.Ct. 1983; *Sniadach, supra,* 395 U.S. at 343, 89 S.Ct. 1820 (Harlan, J., concurring).

12. Since *Fuentes,* two three-judge district courts in this Circuit have similarly struck down state statutes providing for the attachment by trustee process of a bank account without prior notice or

hearing to the defendant. Schneider v. Margossian, 349 F.Supp. 741 (D.Mass. 1972); Trapper Brown Construction Co., Inc. v. Electromech, Inc., 358 F.Supp. 105 (D. N.H.1973). And another three-judge court in this Circuit, in a case involving the attachment of automobiles, has declared unconstitutional a Rhode Island statute permitting such attachments without prior notice and hearing. McClellan v. Commercial Credit Corp., 350 F.Supp. 1013 (D. R.I.1972), aff'd without opinion sub nom. Georges v. McClellan, 409 U.S. 1120, 93 S.Ct. 935, 35 L.Ed.2d 253 (1973).

13. *See, e. g.,* Black Watch Farms, Inc. v. Dick, 323 F.Supp. 100 (D. Conn.1971) (holding that *Sniadach* was limited to the garnishment of wages and its rationale was not intended to cover real estate attachment procedures).

tem, an individual's choices in the marketplace are respected, however unwise they may seem to someone else. It is not the business of a court adjudicating due process rights to make its own critical evaluation of those choices and protect only the ones that, by its own lights, are "necessary." *Id.* 407 U.S. at 90, 92 S.Ct. at 1999.

The Court noted that the Fourteenth Amendment's protection of "property" "has been read broadly to extend protection to 'any significant property interest', Boddie v. Connecticut, 401 U.S. at 379, 91 S.Ct., at 786, 28 L.Ed.2d 113" 407 U.S. at 86, 92 S.Ct. at 1997, and made clear that *any* significant deprivation of property is within the protection of the Due Process Clause. *Id.* at 86–87, 92 S.Ct. 1983.

A restriction on the power of a real estate owner to alienate his property is such a deprivation. A real estate attachment under Maine law, while not disturbing possession, creates a lien on the property, Bachelder v. Perley, 53 Me. 414 (1866); Fletcher v. Tuttle, 97 Me. 491, 54 A. 1110 (1903), and effectively deprives the owner of his ability to convey a clear title while the attachment remains outstanding. 4 American Law of Property § 18.84 (A. J. Casner ed. 1952); 57 A.L.R. 1406–1408 (1928). As the record in the present cases discloses,[14] substantial hardship to the defendant may result. It is thus beyond question that an attachment denies the defendant the unrestricted use of his property in a manner which "cannot be characterized as *de minimis.*" *Sniadach, supra,* 395 U.S. at 342, 89 S.Ct. at 1823 (Harlan, J., concurring). In light of the principles of due process enunciated in *Fuentes,* it cannot be said that the right of an owner of real estate to alienate his property is not a "significant property interest," the deprivation of which is within the Fourteenth Amendment's protection.

As to defendant's second point, the Supreme Court in *Fuentes* recognized that there are "extraordinary situations" that may justify postponement of notice and a hearing. 407 U.S. at 90, 92 S.Ct. 1983. But it cautioned that such situations "must be truly unusual." *Idem. See also Sniadach, supra,* 395 U.S. at 339, 89 S.Ct. 1820. As within the class of "extraordinary situations" justifying outright seizure, the Court noted that an attachment of property without a prior hearing has been allowed when necessary to protect the public against a bank failure (Coffin Bros. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928)), when necessary to secure quasi in rem jurisdiction (Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921)), and when required to protect the public from misbranded drugs. (Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950)) or from contaminated food (North American Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908)). 407 U.S. at 91–92, 92 S. Ct. 1983. The Court pointed out, however, that in each such instance an "important governmental or general public interest" has been involved; there has been a "special need for very prompt action"; and the seizure has been under the "strict control" of a government official responsible for administering a "narrowly drawn" statute. *Id.* at 91, 92 S.Ct. at 2000. None of these conditions are met here. The asserted public interest—the protection of creditors' rights —is no different in this case than it was in *Sniadach* and *Fuentes.* There will normally be no need for prompt action since the property in question is real estate, which cannot be removed or destroyed, and the Maine statutes are not narrowly drawn to meet any special situation in which the plaintiff could make a showing of immediate danger that a defendant will alienate or otherwise encumber his property. *Id.* 407 U.S. at 91, 92 S.Ct. 1983; *Sniadach, supra,* 395 U.S.

14. *See* notes 7 and 9, *supra.*

at 339, 89 S.Ct. 1820. Nor does any government official exercise effective state control over the process, which is entirely within the power of the plaintiff and his attorney. *See Fuentes, supra,* 407 U.S. at 91, 92 S.Ct. 1983.

Finally, defendants contend that the present case is controlled by McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929), in which the Supreme Court affirmed *per curiam* and without opinion, on the authority of Ownbey v. Morgan, *supra*, and Coffin Bros. v. Bennett, *supra*, a decision of the Supreme Judicial Court of Maine, McInnes v. McKay, 127 Me. 110, 141 A. 699 (1928), upholding against due process attack a prejudgment attachment of real estate under Maine law. The Supreme Court observed in *Fuentes*, however, that it is not clear what interests were involved in *McKay* and "[a]s far as essential procedural due process doctrine goes, *McKay* cannot stand for any more than was established in the *Coffin Bros.* and *Ownbey* cases upon which it relied completely." *Fuentes, supra,* 407 U.S. at 91, n. 23, 92 S.Ct. at 1999. *See also, Sniadach, supra,* 395 U.S. at 343–344, 89 S.Ct. 1820 (Harlan, J., concurring).[15] What-

ever vitality *McKay* may have today, it certainly does not negate the basic principle declared in *Fuentes* that any significant deprivation of property within the protection of the Fourteenth Amendment must be preceded by notice and opportunity for hearing.

■ For the foregoing reasons, we hold that those provisions of Chapter 507 of Title 14, M.R.S.A., and Rule 4A of the Maine Rules of Civil Procedure which permit the prejudgment attachment of real estate without prior notice and hearing violate the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and are hence void and unenforceable.[16] Since a retrospective judgment would cast doubt on the validity of all real estate attachments in actions now pending in the Maine courts and would create a cloud on the title to any property hitherto sold pursuant to a real estate attachment, our decree will be prospective only and will have no effect on any attachments, other than the two attachments presently before us, which have been made prior to the date of this opinion. *Cf.* Schneider v. Margossian, *supra,* 349 F.Supp. at 745.[17]

---

15. The Maine court's opinion in *McKay* is equally opaque as to the nature of the attachment involved. But it may reasonably be inferred that the attachment in issue was necessary to secure jurisdiction in the state court, since the court notes that "[t]he defendant appeared specially to object to the jurisdiction of the court and filed a plea and motion that the writ and summons be declared null and void." McInnes v. McKay, *supra,* 127 Me. at 112, 141 A. 699.

16. We note that the only other post-*Fuentes* court which has specifically considered the constitutional validity of similar provisions for the prejudgment attachment of real estate has arrived at the same conclusion. Idaho First National Bank v. Estate of Al Rogers, 41 U.S.L.W. 2492 (Idaho Dist.Ct. February 21, 1973).

17. Our attention has been called to a recent, as yet unpublished, opinion of another three-judge court in this Circuit, filed since the argument in these cases, in which the court declined to apply *Fuentes* retroactively to attachments, including

the one before it, made before June 12, 1972, the date *Fuentes* was decided. Higley Hill, Inc. v. Knight, 360 F.Supp. 203 (D.Mass.1973). The attachment in No. 14–20 was made on February 26, 1973, and would therefore not be affected by such a ruling. Although the attachment in No. 13–117, which was made on March 31, 1972, antedated *Fuentes*, for reasons stated in the body of this opinion, we do not regard *Fuentes* as departing from established principles of procedural due process and are not prepared to give that case solely prospective effect. *See Fuentes, supra,* 407 U.S. at 88, 92 S.Ct. 1983; Randone v. Appellate Dept., 5 Cal. 3d 536, 96 Cal.Rptr. 709, 488 P.2d 13, 22 (Cal.1971). Furthermore, to rule that *Fuentes* is purely prospective is to hold that if a Supreme Court ruling is so characterized, not only may litigants not benefit from its specific application, but courts may not rely on it as precedent for analogous situations where the event in suit antedated the ruling. This we feel would hamper the traditional process of common law adjudication without ad-

The issue of damages will be remanded to Judge Gignoux for hearing and determination. Plaintiffs shall submit a proposed form of declaratory judgment and injunction, with notice to defendants, within ten days. Defendants may present their comments thereon within five days thereafter.

vancing the pragmatic purposes of retroactivity doctrine. *Compare* Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) *with* Morissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).