**Richard E. CRANSTON et al.**

v.

**COMMERCIAL CHEMICAL CORP.**

Supreme Judicial Court of Maine.

Aug. 2, 1974.

**302**

Cram & Dalton by Edward C. Dalton, Jr., Falmouth, for plaintiffs.

Verrill, Dana, Philbrick, Putnam & Williamson by John A. Mitchell, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

Prior to August 1, 1973, the Maine Rules of Civil Procedure, Rule 4A, provided that real estate attachments were expressly excluded from the requirement that notice to the defendant and opportunity for hearing be had before an attachment could be made. On June 25, 1973, a three-Judge

Federal District Court declared that portion of Rule 4A violated established principles of due process and was therefore unconstitutional. Gunter v. Merchants Warren National Bank et al., 360 F.Supp. 1085 (D.Me.1973).

In response to *Gunter*, this Court amended Rule 4A, effective August 1, 1973, to include the attachment of real estate within the prior notice and hearing requirement.

What effect does the *Gunter* decision have on real estate attachments made under the old rules without pre-attachment notice and hearing?

That is the issue which we must decide on plaintiffs'[1] appeal from an interlocutory order dissolving their attachment of defendant's real estate.[2]

We sustain the appeal.

We hold that the decision in *Gunter* had no effect on those attachments made before it was decided.

As part of an action against the defendant corporation for alleged flood damage to their properties, the plaintiffs attached certain of defendant's land in Windham, Maine.

The attachment was made on May 31, 1973.

Under the then existing rule, plaintiffs were permitted to attach real estate without prior notice to defendant or opportunity for hearing.

Subsequently, *Gunter* was decided and the August 1 amendments to Rule 4A were promulgated.

Following this, on August 27, 1973, the defendant filed a motion to dismiss plaintiffs' attachment. On the basis of *Gunter* and the amended rule, the Superior Court Justice granted the motion.

1. See Note 3, infra.

2. This appeal is properly before us. As this Court recognized in Foisy v. Bishop, Me., 232 A.2d 797, 798 (1967) : "An Order vacating an attachment falls within an exception to the *'final judgment'* rule and is immediately appealable since *'great and irreparable loss'* may otherwise result."

Rule 4A, as it existed at the time the plaintiffs made their attachment, had been amended effective January 1, 1973, to require prior notice and opportunity for hearing before the attachment of all types of property *except* real estate.[3] In lieu of a preattachment hearing, Rule 4A(g) provided that a defendant whose real estate had been attached had a right, upon notice to the plaintiff, to an expeditious hearing on a motion to dissolve or modify the lien.

The Advisory Committee Notes which accompanied the January 1 amendments reveal that the changes in the attachment procedures regarding property other than real estate were made in direct response to *Fuentes* and its progeny.[4] The Committee noted that the constitutionality of prejudgment attachment of real estate was about to be tested in the courts, i. e., in *Gunter,* but that at the time the January rules were promulgated, a change in real estate attachment procedure was not clearly mandated. The Committee stated:

> "The amendments do not, however, go beyond the requirements of the decided cases. The amendment of Rule 4–A does not modify the procedure for making real estate attachments. *Fuentes* and the cases thus far decided in the First Circuit do not in terms outlaw real estate attachments which do not disturb the defendant's possession of the attached property, Rule 4–A, Advisory Committee's Note (Jan. 1, 1973), p. 2."

Eventually, in *Gunter,* the Maine real estate attachment procedure was held to be constitutionally defective.

The *Gunter* court, reasoning from *Fuentes,* struck down Rule 4A (and 14 M.R.S.A. § 4451) for its failure to provide a hearing before significant property rights were infringed upon.[5]

The Supreme Judicial Court then amended Rule 4A.

Defendant corporation contends that the three-Judge Court in *Gunter* did not intend to preclude from constitutional examination real estate attachments which preceded its ruling. The corporation argues that the *Gunter* rationale is valid and persuasive evidence that the plaintiffs' attachment was properly dissolved since it was made pursuant to what is now declared to be unconstitutional procedure.

■ The express language of the *Gunter* Court reveals the error of this contention:

> "Since a retrospective judgment would cast doubt on the validity of all real estate attachments in actions now pending in the Maine courts and would create a cloud on the title to any property hitherto sold pursuant to a real estate attachment, our decree will be prospective only and will have no effect on any attachments, other than the two attachments presently before us, which have been made prior to the date of this opinion." 360 F.Supp. 1085, 1091.

Clearly, the District Court made the determination that a retroactive application of its new rule would be inappropriate.

---

3. The rule stated in part: *"No property [other than real estate]* may be attached unless such attachment for a specific amount is approved by order of the court. Except as provided in subdivision (f) of this rule, the order of approval may be entered only after notice to the defendant and hearing upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment." M.R.C.P., Rule 4A(c). (Emphasis supplied)

  Part (f) allowed a plaintiff to procure an ex parte court order approving an attachment upon a showing that there is a reasonable

likelihood that he will recover judgment, and that the attachment without prior hearing is needed either (1) for jurisdictional purposes or (2) because there is a clear danger that the defendant will conceal, damage, destroy, or remove the property if notified in advance of the attachment.

4. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); McClellan v. Commercial Credit Corp., 350 F.Supp. 1013 (D.R.I.1972); Schneider v. Margossian, 349 F.Supp. 741 (D.Mass.1972).

5. 360 F.Supp. at 1088.

■ It opted instead for a prospective invalidation of Rule 4A.[6]

Independently of *Gunter,* we find no reason to doubt the constitutional validity of our Rule 4A and 14 M.R.S.A. § 4451 in force at the time the attachment here before us was made.

As earlier noted, the Supreme Judicial Court in making changes in the attachment process by its amendment to Rule 4A effective January 1, 1973, expressly eliminated real estate attachments from the requirement of prior notice and opportunity for hearing.

We then concluded the *Fuentes* requirement of pre-attachment notice and opportunity for hearing did not apply to real estate attachments.

Our opinion in that regard remains unchanged.

The *Gunter* Court interpreted the broad language of *Fuentes* to compel pre-notice and opportunity for hearing even as to real estate attachments where the only effect of the attachment is a temporary restriction on the owner's power of alienation.

Mitchell v. W. T. Grant Company, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), has cast considerable doubt upon the continued viability of the *Gunter* Court's reasoning.

Reinforcing our view, Mr. Justice Powell, concurring in *Mitchell,* said:

"In sweeping language, Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972), enunciated the principle that the constitutional guarantee of procedural due process requires an adversary hearing before an individual may be temporarily deprived of any possessory interest in tangible personal property, however brief the dispossession and however slight his monetary interest in the property. The Court's decision today withdraws significantly from the

---

6. It is settled that constitutional decisions may be limited so as to have only future effect. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Ruotolo et al. v. Gould, 489 F.2d 1324 (C.A. N.H.1974); Papolas v. State, Me., 235 A.2d 533 (1967).

In *Linkletter* and later cases which are carefully examined in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), 3 factors were stated to be the governing criteria for determining when a new judicial rule of constitutional law should become applicable in both civil and criminal actions. These were

(1) the purpose to be served by the particular new rule;

(2) the extent of reliance which had been placed upon the old rule; and

(3) the effect on the administration of justice of a retroactive application of the new rule.

More recently in Lemon v. Kurtzman et al., (Lemon II), 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) and Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), the test suggested in *Linkletter* was noticed as being inadequate to cover all situations.

In *Lemon (II)* Mr. Chief Justice Burger, writing for a majority of the Court said:

"The process of reconciling the constitutional interests reflected in a new rule of law with reliance interests founded upon the old is '*among the most difficult of those which have engaged the attention of courts, state and federal. . . .*' Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Consequently, our holdings in recent years have emphasized that the effect of a given constitutional ruling on prior conduct '*is subject to no set* "principle of absolute retroactive invalidity" *but depends upon a consideration of* "particular relations . . . and particular conduct . . . of rights claimed to have become vested, of status, of prior determinations deemed to have finality"; and of "public policy in the light of the nature both of the statute and its previous applications." ' *Linkletter, supra,* 381 U.S. at 626–627, 85 S.Ct. at 1736 quoting from *Chicot County Drainage Dist., supra,* 308 U.S. at 374, 60 S.Ct. [317] at 319. However appealing the logic of Norton may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity. Appellants offer no persuasive reason for confining the modern approach to those constitutional cases involving criminal procedure or municipal bonds, and we ourselves perceive none."

full reach of that principle, and to this extent I think it fair to say that the *Fuentes* opinion is overruled."

If then it now eventuates that *Gunter* may have gone too far in its delineation of Federal Constitution requirements, our adoption of the August 1, 1973, amendment to Rule 4A may be considered a decision of policy rather than one constitutionally mandated.

If, on the other hand *Gunter* retains constitutional viability in the face of *Mitchell*, by its own terms it has only prospective application.

Since the decision of Gunter v. Merchants Warren National Bank, supra, was made prospective only, the Court below was in error in granting the motion to dissolve plaintiff's attachment.

The entry must be,

Appeal sustained. The attachment reinstated.

All Justices concurring.