**In the Matter of THE ORONOKA, alleged bankrupt.**

**No. BK–73–96 ND.**

United States District Court, D. Maine, N. D.

March 17, 1975.

**1312**

Orman G. Twitchell, Edward H. Keith, Bangor, Me., for plaintiff.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is an appeal from an order of the Bankruptcy Judge dismissing a Creditors' Petition filed under Section 3b of the Bankruptcy Act, 11 U.S.C. § 21(b), seeking the adjudication of The Oronoka as an involuntary bankrupt. The Creditors' Petition was filed against The Oronoka by three of its alleged creditors on April 11, 1973, alleging commission of the second and third acts of bankruptcy. Bankruptcy Act § 3a(2) and (3), 11 U.S.C. § 21(a)(2) and (3).[1] The Oronoka filed a timely answer denying that it had committed the acts of bankruptcy alleged in the petition. The Bankruptcy Judge has held the allegation with respect to commission of the second act of bankruptcy to be legally insufficient, and no appeal has been taken from that ruling. The remaining allegations of the Creditors' Petition, alleging commission of the third act of bankruptcy, charge that The Oronoka failed, while insolvent, to cause two prejudgment real estate attachment liens obtained by Bangor Savings Bank and Striar Brothers Textile Mill on February 9, 1973 and February 28, 1973, respectively, to be vacated or discharged within 30 days. The Bankruptcy Judge held that the two prejudgment real estate attachment liens, obtained without prior notice and hearing after June 12, 1972, the date the Supreme Court decided Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) were, at least in the context of bankruptcy proceedings, voidable by the alleged

---

1. Section 3a(2) and (3) of the Bankruptcy Act provides:

Acts of bankruptcy by a person shall consist of his having . . . (2) made or suffered a preferential transfer as defined in subdivision a of section 60 of this Act; or (3) suffered or permitted, while insolvent, any

creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property; . . . .

bankrupt. Because the Bankruptcy Judge further concluded that the failure of an insolvent corporation to vacate or discharge a voidable attachment lien within 30 days after it took effect did not constitute an act of bankruptcy, he dismissed the Creditors' Petition. In so ruling, the Bankruptcy Judge recognized that retrospective effect was not to be given to Gunter v. Merchants, etc., National Bank, 360 F.Supp. 1085 (D.Me. 1973), in which a three-judge panel of this Court, relying on principles declared by the Supreme Court in *Fuentes*, held on June 25, 1973 that the provisions of Chapter 507 of Title 14 M.R.S.A., 14 M.R.S.A. § 4451 et seq., and Rule 4A of the Maine Rules of Civil Procedure, insofar as they permitted the prejudgment attachment of real estate without prior notice and hearing, violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[2] He reasoned, however, that, at least in the special context of bankruptcy proceedings, the *Gunter* mandate that its judgment be accorded purely prospective application should not be interpreted to render a post-*Fuentes* attachment, obtained without prior notice and hearing, impervious to constitutional attack by application of the Due Process principles announced in *Fuentes*. Applying *Fuentes* principles to the Maine prejudgment real estate attachment procedures, he concluded, as did the *Gunter* court, that they cannot pass constitutional muster. Since this Court is persuaded that the subsequent opinion of the Supreme

Court in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), and the summary affirmance by that Court of the decision of a three-judge District Court in Spielman-Fond, Inc. v. Hanson's, Inc., 379 F.Supp. 997 (D.Ariz.1973), aff'd, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974)—decisions which were not available for the Bankruptcy Judge's consideration—have significantly vitiated the scope of *Fuentes* and cast substantial doubt on the continued vitality of *Gunter*, the order of the Bankruptcy Judge, insofar as it is based on his conclusion that the attachments were voidable, must be reversed.[3]

In *Fuentes*, a 4–3 majority of the Supreme Court[4] held invalid the Florida and Pennsylvania statutes authorizing the summary seizure of personal property under a writ of replevin. The Court enunciated the broad principle that any significant taking of property within the protection of the Fourteenth Amendment, however brief or temporary, must be preceded by notice and opportunity for a prior hearing, "the only truly effective safeguard against arbitrary deprivation of property." 407 U.S. at 83, 92 S.Ct. at 1996. The majority opinion, written by Mr. Justice Stewart, was unequivocal in its holding that Due Process requires a hearing *prior* to the deprivation of any significant property interest:

This is no new principle of constitutional law. The right to a prior hear-

---

2. In *Gunter*, the court expressly held that its judgment would not be given retroactive effect:

Since a retrospective judgment would cast doubt on the validity of all real estate attachments in actions now pending in the Maine courts and would create a cloud on the title to any property hitherto sold pursuant to a real estate attachment, our decree will be prospective only and will have no effect on any attachments, other than the two attachments presently before us, which have been made prior to the date of this opinion. 360 F.Supp. at 1091 (citations omitted).

3. It is therefore unnecessary to consider the Bankruptcy Judge's further holding that the failure to vacate a voidable attachment lien within 30 days does not constitute an act of bankruptcy.

4. Although Mr. Justice Powell and Mr. Justice Rehnquist were members of the Court at the time *Fuentes* was announced, they were not members of the Court when the case was argued, and they did not participate in its "consideration or decision." 407 U.S. at 97, 92 S.Ct. 1983.

ing has long been recognized by this Court under the Fourteenth and Fifth Amendments. Although the Court has held that due process tolerates variances in the *form* of a hearing "appropriate to the nature of the case," Mullane v. Central Hanover [Bank &] Tr. Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865, and "depending upon the importance of the interests involved and the nature of the subsequent proceedings [if any]," Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect. *E. g.*, Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90; Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; Armstrong v. Manzo, 380 U.S. [545], at 551, 85 S.Ct. [1187], at 1191 [14 L.Ed.2d 62]; Mullane v. Central Hanover [etc.], Tr. Co., *supra,* 339 U.S. at 313, 70 S.Ct. [652] at 656; Opp Cotton Mills v. Administrator, 312 U.S. 126, 152–153, 61 S. Ct. 524, 535–536, 85 L.Ed. 624; United States v. Illinois Central R. Co., 291 U.S. 457, 463, 54 S.Ct. 471, 473, 78 L. Ed. 909; Londoner v. City & County of Denver, 210 U.S. 373, 385–386, 28 S.Ct. 708, 714–715, 52 L.Ed. 1103. See In re Ruffalo, 390 U.S. 544, 550–551, 88 S.Ct. 1222, 1225–1226, 20 L.Ed. 2d 117. "That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Boddie v. Connecticut, *supra,* 401 U.S. at 378–379, 91 S.Ct. [780], at 786 (emphasis in original). *Id.* at 82, 92 S.Ct. at 1995.

Moreover, although the challenged statutes included provisions permitting the defendants to quickly recover the property taken from them, the Court was emphatic that such "temporary, non-final" takings "were deprivations of property that had to be preceded by a fair hearing." *Id.* at 85, 92 S.Ct. at 1996. In the words of Mr. Justice Stewart:

> The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause. While the length and consequent severity of a deprivation may be another factor to weigh in determining the appropriate form of hearing, it is not decisive of the basic right to a prior hearing of some kind. *Id.* at 86, 92 S.Ct. at 1997.

The Supreme Court in *Fuentes* also laid to rest the notion that the requirements of Due Process are limited to the protection of only a few types of property interests. *Id.* at 86–90, 92 S.Ct. 1983. Rejecting a narrow reading of its earlier decisions in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970)[5], which some lower courts had interpreted as requiring a prior hearing only with respect to the deprivation of such "absolute necessities" of life as wages and welfare benefits, the Court made clear that *any* significant

---

5. In *Sniadach,* the Supreme Court invalidated a Wisconsin prejudgment wage garnishment statute because it afforded a defendant neither notice nor opportunity to be heard prior to the garnishment of his wages. In *Goldberg,* the Court held that welfare benefits may not be terminated without prior notice and hearing.

deprivation of property is within the protection of the Due Process Clause:

> [I]f the root principle of procedural due process is to be applied with objectivity, it cannot rest on such distinctions. The Fourteenth Amendment speaks of "property" generally. And, under our free-enterprise system, an individual's choices in the marketplace are respected, however unwise they may seem to someone else. It is not the business of a court adjudicating due process rights to make its own critical evaluation of those choices and protect only the ones that, by its own lights, are "necessary." 407 U.S. at 90, 92 S.Ct. at 1999.

Reasoning from *Fuentes,* the *Gunter* court struck down the provisions of the Maine statutes and Rule providing for the prejudgment attachment of real estate because of their failure to afford a defendant an opportunity to be heard *before* attachment of his real property. 360 F.Supp. at 1088. The court held that, despite the fact Rule 4A, as it had been recently amended,[6] permitted a defendant to obtain an expeditious dissolution of the attachment, it was of no consequence that the deprivation was temporary and not final. *Id.* at 1088–89. Relying on *Fuentes,* the *Gunter* court also held that the restriction upon the power to alienate property resulting from a real estate attachment was a significant deprivation of property within the protection of the Due Process Clause. *Id.* at 1089–90.

In Mitchell v. W. T. Grant Co., *supra,* decided May 13, 1974, a 5–4 majority of the Supreme Court[7] upheld the Louisiana sequestration statute, which permitted a secured installment seller to obtain a writ of sequestration without notice or opportunity for prior hearing. Departing significantly from the broad principle declared in *Fuentes* that *any* significant deprivation of property must be preceded by notice and opportunity for a prior hearing, the Court in *Mitchell* rejected the contention that Due Process requires a hearing before a deprivation occurs:

> Petitioner asserts that his right to a hearing before his possession is in any way disturbed is nonetheless mandated by a long line of cases in this Court, culminating in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The pre-*Sniadach* cases are said by petitioner to hold that "the opportunity to be heard must precede any actual deprivation of private property." Their import, however, is not so clear as petitioner would have it: they merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pre-termination hearing where a full and immediate post-termination hearing is provided. The usual rule has been "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of lia-

---

6. An amendment to Rule 4A, effective January 1, 1973, permitted a defendant "[o]n 2 days' notice to the plaintiff or on such shorter notice as the court may prescribe," to move for the dissolution or modification of the attachment, in which event the court was directed to hear and determine the motion "as expeditiously as the ends of justice require." Me.R.Civ.P. 4A(g). The amended Rule placed on the Plaintiff the burden of justifying the issuance of the attachment. *Idem.* Amendments to Maine Rules of Civil Procedure and District Court Civil Rules, Me.Rep. 293–299 A.2d, XIX.

Subsequent to Gunter, Rule 4A was further amended, effective August 1, 1973, to require notice and hearing before an attachment of real estate could be made. Amendments to Maine Rules of Civil Procedure and District Court Civil Rules, Me.Rep. 300–307 A.2d, XIX.

7. Mr. Justice Powell and Mr. Justice Rehnquist joined with the Chief Justice, Mr. Justice White and Mr. Justice Blackmun, the three dissenting Justices in *Fuentes,* to form the *Mitchell* majority. 416 U.S. at 601, 94 S.Ct. 1895.

bility is adequate." 416 U.S. at 611, 94 S.Ct. at 1902 (footnote omitted).

Since the Louisiana sequestration statute entitled the debtor to an immediate hearing at which the creditor had the burden of justifying the issuance of the writ, the Court concluded that the challenged procedure comported with Due Process. *Id.* at 606–10, 94 S.Ct. 1895.[8] It is thus clear that *Mitchell* marks a significant withdrawal from the *Fuentes* requirement of a prior ·hearing before even a temporary deprivation of property can be effected.[9]

On May 28, 1974, two weeks after *Mitchell* had been decided, the Supreme Court affirmed, without opinion, the decision of the three-judge District Court in Spielman-Fond, Inc. v. Hanson's, Inc., *supra,* upholding the constitutionality of Arizona's mechanics' lien law. In finding the Arizona law constitutional, the three-judge District Court explicitly rejected the argument that the restriction on the power to alienate real property imposed by a mechanics' lien was a "significant property interest," which merited the Due Process protection of notice and opportunity for a prior hearing. The District Court distinguished *Sniadach, Goldberg* and *Fuentes,* on the ground that those cases involved an ac-

tual taking of property, whereas a mechanics' lien permitted the defendant to remain in continued possession and enjoyment of his property. The District Court said:

> The instant case, by contrast, presents no actual taking of ·possession of any kind from plaintiffs. Indeed, the stipulated facts demonstrate that plaintiffs remain in continued possession of their land and continue to· rent mobile home spaces to the tenants who are unaware of the lien claims. Thus, plaintiffs here have not been deprived of possession or use of their property as were the cases in *Sniadach, Goldberg* and *Fuentes.* 379 F.Supp. at 999.

Accordingly, the District Court concluded "that the filing of a mechanics' and materialmen's lien does not amount to a taking of a significant property interest," and, therefore, Due Process does not require notice and hearing prior to the filing of the lien. *Id.* at 999–1000.[10] The Supreme Court summarily affirmed the decision of the three-judge court.

It is evident that *Mitchell* and *Spielman-Fond* have substantially modified the constitutional principles derived from *Fuentes* which constituted the *ratio decidendi* of *Gunter.* Whether or not, as four of the present Justices ap-

---

8. In addition to the Louisiana sequestration statute's quick recovery provisions, the *Mitchell* Court noted other safeguards against arbitrary deprivations of property provided for by the sequestration procedure, *see* 416 U.S. 615–20, 94 S.Ct. 1895, to support its conclusion that the entire statutory scheme effected "a constitutional accommodation of the conflicting interests of the parties." *Id.* at 607, 94 S.Ct. at 1900.

9. Significantly, the Court in *Mitchell* also cited with apparent approval McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929), in which the Supreme Court had affirmed per curiam and without opinion, on the authority of Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921) and Coffin Bros. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928), a decision of the Supreme Judicial Court of Maine, McInnes v. McKay, 127 Me. 110, 141 A. 699 (1928), upholding against Due Process attack Maine's prejudgment real estate· attachment law. 416 U.S. at 613–14, 94 S.Ct.

1895. In *Fuentes,* however, the Court had observed that it is not clear what interests were involved in *McKay* and "[a]s far as essential procedural due process doctrine goes, *McKay* cannot stand for any more than was established in the *Coffin Bros.* and *Ownbey* cases upon which it relied completely." 407 U.S. at 91 n. 23, 92 S.Ct. at 1999. It was on the basis of this language that this Court in *Gunter* concluded that "[w]hatever vitality *McKay* may have today, it certainly does not negate the basic principles declared in *Fuentes* that any significant deprivation of property within the protection of the Fourteenth Amendment must be preceded by notice and opportunity for hearing." 360 F.Supp. at 1091.

10. In addition to *Spielman-Fond,* two other courts have recently upheld the constitutionality of state mechanics' lien laws. Ruocco v. Brinker, 380 F.Supp. 432 (S.D.Fla.1974) (three-judge court) (post-*Mitchell*) ; Cook v. Carlson, 364 F.Supp. 24 (D.S.D.1973) (pre-*Mitchell*).

parently believe, *Mitchell* overruled the *Fuentes* opinion (*see Mitchell, supra,* 416 U.S. at 623–29, 94 S.Ct. at 1908–1910 (Powell, J., concurring),[11] 416 U.S. at 629–36, 94 S.Ct. at 1910–1914 (Stewart, J., with whom Douglas and Marshall, JJ., concur, dissenting)[12]; *but see* North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 606, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (Stewart, J., concurring)),[13] it is now clear that there may be a temporary taking of property without prior notice and opportunity for hearing. Similarly, the Supreme Court's summary affirmance of the three-judge District Court in *Spielman-Fond* can only be rationally explained as ratification of the District Court's conclusion that the restriction on the power to alienate real property which results from the imposition of a lien is not a "significant property interest" protected by the Fourteenth Amendment. Rule 4A of the Maine Rules of Civil Procedure, as in effect at the time of the real estate attachments involved in the present case, permitted a defendant to obtain a hearing within two days after notice of the attachment, at which the plaintiff had the burden of justifying its issuance. *See* note 6 *supra*. Furthermore, a real estate attachment under Maine law, while depriving the owner of his ability to convey a clear title while the attachment remains outstanding, in no way disturbs his right to possession and enjoyment of the property. Bachelder v. Perley, 53 Me. 414 (1866); Fletcher v. Tuttle, 97 Me. 491, 54 A. 1110 ( 1903); 4 American Law of Property § 18.84 (A. J. Casner ed. 1952); 57 A.L.R. 1406–08 (1928). *Mitchell* and *Spielman-Fond* require the conclusion that the real estate attachment liens in the present case were not obtained in violation of the Due Process Clause of the Fourteenth Amendment and therefore were not, as the Bankruptcy Judge held, subject to avoidance by the alleged bankrupt. Accordingly, the order of the Bankruptcy Judge dismissing the Creditors' Petition on the ground that The Oronoka did not commit the third act of bankruptcy by failing, while insolvent, to vacate the attachment liens within 30 days after they took effect, must be reversed.

The order of the Bankruptcy Judge dismissing the Creditors' Petition is reversed, and the matter is remanded to the Bankruptcy Judge for further proceedings not inconsistent with this opinion.

It is so ordered.

11. In his concurring opinion in *Mitchell*, Mr. Justice Powell wrote:

In sweeping language, Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), enunciated the principle that the constitutional guarantee of procedural due process requires an adversary hearing before an individual may be temporarily deprived of any possessory interest in tangible personal property, however brief the dispossession and however slight his monetary interest in the property. The Court's decision today withdraws significantly from the full reach of that principle, and to this extent I think it fair to say that the *Fuentes* opinion is overruled. 416 U.S. at 623, 94 S.Ct. at 1908.

12. Dissenting in *Mitchell*, Mr. Justice Stewart observed:

In short, this case is constitutionally indistinguishable from Fuentes v. Shevin, and the Court today has simply rejected the reasoning of that case and adopted instead the analysis of the *Fuentes* dissent. . . .

. . . [T]he Court today has unmistakably overruled a considered decision of this Court that is barely two years old . . . . 416 U.S. at 634–35, 94 S.Ct. at 1913.

13. In *North Georgia Finishing*, the Court struck down a Georgia statute which provided for the prejudgment garnishment of a bank account without prior notice or hearing. Concurring in the judgment and opinion of the Court, Mr. Justice Stewart wrote:

It is gratifying to note that my report of the demise of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, see Mitchell v. W. T. Grant Co., 416 U.S. 600, 629–636, 94 S.Ct. 1895, 1910–1914, 40 L.Ed.2d 406, seems to have been greatly exaggerated. Cf. S. Clemens, Cable from Europe to the Associated Press, reprinted in II A. Paine, Mark Twain: A Biography 1039 (1912).