359 A.2d 694.

JOSEPH E. MARRAN, JR., *Ex'r* vs. J. BERNARD GORMAN

*et ux.*

JULY 13, 1976.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This case is before us on a petition for common law certiorari. The petitioner is the executor of the estate of Ethel M. Gorman. The respondents are the deceased's son and daughter-in-law. The petitioner contends that a justice of the Superior Court erroneously granted the respondents' motion to release their real estate from a prejudgment attachment effectuated prior to the United States Supreme Court decision, *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

On May 6, 1968, Ethel M. Gorman commenced suit in the Superior Court for Washington County against her son and daughter-in-law by issuing a complaint,

summons and a writ of attachment. The respondents were served with the summons and writ on May 8, and a copy of the real estate attachment was duly recorded with the North Kingstown town clerk.

The Superior Court litigation centers on the deceased's claim that she had loaned the Gormans large sums of money which were never repaid. In September 1972, more than 4 years after the filing of the complaint, respondents denied the allegations and filed a counterclaim seeking $25,000 for lodging, meals, and maintenance furnished the deceased from 1954 to 1966. Almost 2 years later, September 1974, several motions were filed by both parties. The respondents filed a motion to dismiss the case for lack of prosecution and a motion seeking a release of the real estate attachment. A motion was filed suggesting the death of Ethel M. Gorman, who had died on May 8, 1972, and asking that her executor be substituted as plaintiff. In addition, a second motion sought to dismiss respondents' counterclaim because they had failed to file a claim against the decedent's estate. A Superior Court justice heard arguments on these motions and on September 26, 1974, entered orders denying respondents' motion to dismiss for lack of prosecution, noting the death of Ethel, substituting her executor as plaintiff, dismissing the counterclaim, and releasing the real estate attachment.

The trial justice, in granting the motion to release the attachment, apparently relied upon the holding in *McClellan* v. *Commercial Credit Corp.*, 350 F. Supp. 1013 (D. R. I. 1972). In *McClellan* a three-judge panel declared that the Rhode Island prejudgment attachment procedure statute, G. L. 1956 (1969 Reenactment) §10-5-1 et seq., was unconstitutional in light of the Supreme Court's decision in *Fuentes*.[1]

---

[1] Unlike a number of federal courts which have passed upon the con-

652

This court has never decided whether a prejudgment attachment of real estate pursuant to §10-5-9, prior to its amendment in 1973, violated the fourteenth amendment of the United States Constitution.[2] Like our northerly neighbor, the Massachusetts Supreme Judicial Court, we assume without deciding that a prejudgment attachment of real estate imposed after the date of the *Fuentes* decision (June 12, 1972) without prior notice and an opportunity to be heard would be unconstitutional. *See McIntyre* v. *Associates Financial Services Co.*,                Mass.            , , 328 N.E. 2d 492, 494 (1975). Our decision regarding the validity of the Superior Court justice's release of the Gormans' 1968 attachment can be based solely on the resolution of whether the principles enunciated in *Fuentes* and its family of cases[3] should be retroactively applied.

---

stitutionality of state statutes allowing prejudgment attachment without notice or hearing, the *McClellan* court did not specifically limit its holding to the parties in the case and a prospective application of its decision. However, the Rhode Island General Assembly at its January 1973 session amended §10-5-2 so that attachment of real or personal estate can be made only after notice to the defendant and a judicial hearing on the motion to attach. *See* P. L. 1973, ch. 109, §1.

[2] Several federal courts in this circuit have held similar state statutes permitting prejudgment attachments of real estate unconstitutional because of *Fuentes*. *See Terranova* v. *Avco Financial Services of Barre, Inc.*, 396 F. Supp. 1402, 1407 (D. Vt. 1975); *Bay State Harness Horse Racing & Breeding Ass'n* v. *PPG Industries, Inc.*, 365 F. Supp. 1299, 1306 (D. Mass. 1973); *Gunter* v. *Merchants Warren Nat'l Bank*, 360 F. Supp. 1085, 1088 (S. D. Me. 1973).

[3] Following *Fuentes* the Supreme Court decided two other cases concerning due process and the prejudgment attachment of personal property. The first of these decisions was *Mitchell* v. *W. T. Grant Co.*, 416 U. S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), which cast considerable doubt about the holding in *Fuentes*. Later, in *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U. S. 601, 95 S.Ct. 719, 42 L.Ed. 2d 751 (1975), the Court apparently resolved these doubts by reaffirming the principles of *Fuentes* and distinguishing the *Mitchell* case.

The Supreme Court of the United States has listed three separate factors that it considers when determining whether a decision establishing a new principle of law in a civil case will be applied retroactively: (1) whether the new principle established was one whose adoption was clearly foreshadowed; (2) whether retroactive application will further or retard the purposes which motivated the adoption of the rule; and (3) whether inequitable results will ensue from a retroactive application. *Chevron Oil Co.* v. *Huson,* 404 U. S. 97, 106-07, 92 S. Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971).

It is evident that when the deceased instituted this litigation in 1968 there was no holding of the Supreme Court which foreshadowed the rule of *Fuentes;* retroactivity would not in any way further the operation of the rule; rather, it would result in substantial hardship to those creditors who reasonably relied upon the lawful statutory procedures which were a part of the organic law of Rhode Island prior to June 12, 1972. In addition, it would cast a cloud on the validity of many real estate attachments now pending in the Rhode Island courts and raise doubts as to the title of real estate that might have been sold pursuant to a writ of attachment. Consequently, we hold that the rule of *Fuentes* is not applicable to the case at bar nor to any other civil action now pending in the courts of this jurisdiction which was commenced prior to the date of the *Fuentes* opinion.[4] The *Fuentes*

---

[4] Decisions of Federal District Courts construing Rhode Island law in the light of certain constitutional principles enunciated by the United States Supreme Court, while not binding on us, are certainly entitled to our respect. *See McIntyre* v. *Associates Financial Services Co.,* Mass.     ,     , 328 N.E.2d 492, 494 n.1 (1975). Shortly after the court in *Gunter* v. *Merchants Warren Nat'l Bank, supra* note 2, declared that Maine's real estate attachment procedure was unconstitutional, the Maine Supreme Court amended the rule governing attachment so as to include real estate attachments within the prior notice and hearing

principles are to be applied in a purely prospective sense. However, whether the effective date of its prospectivity will be the date of the *Fuentes* opinion, the date of the *McClellan* opinion, the date of the 1973 amendment to §10-5-2, or some other date, is an issue we will resolve only if and when it becomes necessary.

The petition for certiorari is granted, the order releasing the real estate attachment is quashed, and the papers certified to this court are ordered returned to the Superior Court with our decision endorsed thereon.

*Joseph E. Marran, Jr.,* for petitioner.

*F. Albert Starr,* for respondents.

---

requirement. When confronted with a real estate attachment made 2 months prior to the *Gunter* decision, the Maine Supreme Court ruled that the pre-*Gunter* attachment still retained its constitutional viability. *Cranston* v. *Commercial Chem. Corp.,* 324 A.2d 301, 302 (Me. 1974).