David SCHNEIDER et al., Plaintiffs,

v.

Michael MARGOSSIAN et al.,
Defendants.

Janet C. PASTOR et al., Plaintiffs,

v.

Liman TRUST et al., Defendants.

Civ. A. Nos. 72-1421-G, 72-1681-G.

United States District Court,
D. Massachusetts.

Sept. 22, 1972.

Supplemental Memorandum and Order
Oct. 26, 1972.

Patrick J. King, Boston, Mass., Michael G. West, Cambridge & Somerville Legal Services, Cambridge, Mass., for David Schneider and others.

Paul Kilgarriff, Asst. Atty. Gen., Boston, Mass., for Joseph Conway.

Francis Fox, Paul J. Lambert, Bingham, Dana & Gould, Boston, Mass., for Harvard Trust Co.

Robert I. Goldman, Boston, Mass., for Janet C. Pastor and others.

Norman Ostroff, Boston, Mass., for Liman Trust & L. S. Jacobs.

James J. Marcellino, Ely, Bartlett, Brown & Proctor, Boston, Mass., for Harbor National Bank.

Danielle E. deBenedictis, Deputy Asst. Atty. Gen., Boston, Mass., for John E. Hurley.

Harvey Fishman, Cambridge, Mass., for Michael Margossian.

Before COFFIN, Circuit Judge, and GIGNOUX and GARRITY, District Judges.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

The joint question presented by these cases is whether the prejudgment attachment procedures under Massachusetts law, specifically the trustee process sections of Mass.G.L. c. 246, violate the due process clause of the Fourteenth Amendment to the Constitution of the United States. In each case the plaintiff had been sued in state court pursuant to the attachment procedure; as permitted by statute, their bank accounts were attached without any prior notice to them or opportunity to be heard before the making of the attachments. Plaintiffs then instituted these suits, seeking preliminary and permanent injunctive relief, alleging that the attachments were effected in violation of due process. As the actions sought to enjoin further enforcement of a state statute on the grounds of its inconsistency with the Constitution of the United States, three-judge courts were convened. Because plaintiffs were able to show both a substantial likelihood of success on the merits, and that a denial of immediate relief would work irreparable harm on them, this court after

hearing granted preliminary injunctions enjoining the further enforcement against the plaintiffs of the trustee process sections of the Massachusetts statutes.[1]

Upon further consideration of the briefs of the parties filed after the hearing, we now hold that the trustee process sections here attacked, Mass.G.L. c. 246, violate the due process clause of the Fourteenth Amendment to the Constitution of the United States. Accordingly, we enjoin the defendants from further enforcement of the trustee process statutes insofar as they deny to defendants in civil actions within the statutes' scope notice and an opportunity for hearing prior to the making of attachments on defendants' personal property by means of trustee process.

■ In deciding whether to issue preliminary injunctions we considered whether their effect would be to stay state court proceedings, in which event the court would be prevented by the federal anti-injunction statute, 28 U.S.C. § 2283, from granting the relief sought. We ruled that the Massachusetts trustee process procedure was sufficiently similar to the Connecticut prejudgment garnishment scheme to be governed by the holding of Lynch v. Household Finance Corp., 1972, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, that garnishment procedures like Connecticut's do not amount to "proceedings in a state court" within the meaning of § 2283. We adhere to that judgment; a more recent Supreme Court decision, however, Mitchum v. Foster, 1972, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705, has obviated any

need for a determination of this particular question. The Court there held that because 42 U.S.C. § 1983 authorizes suits in equity to redress the deprivation under state law of any constitutional rights, that statute falls within the "expressly authorized" exception to the federal anti-injunction statute, 28 U.S.C. § 2283. Since the instant actions were brought in reliance on § 1983, the anti-injunction statute does not apply to them, and the determination of whether trustee process constitutes a state court proceeding is not dispositive of the question whether we may grant the relief sought here.

Under long-standing practice, most civil actions in Massachusetts may be commenced by attaching the defendant's property. Under this procedure, the plaintiff simply fills in the blanks on a writ, averring that the defendant is liable to him for a certain amount on a particular cause of action; the writ then directs the appropriate officer to attach the property of the defendant, either in the defendant's hands or, as here, in the hands of a trustee. Mass. G.L. c. 223, § 16. Whether the goods are attached in the defendant's or the trustee's hands is immaterial: the property is held to "satisfy such judgment as the plaintiff may recover," c. 223, § 42; see also c. 246, § 20, unless the defendant has the attachment dissolved by posting bond, c. 223, § 120. Although the defendant receives notice of the attachment shortly after its making, c. 223, § 17, there is no provision whereby he can contest an attachment before it is made.[2]

---

1. During the hearing, the parties consented to the action on the merits being advanced and consolidated pursuant to Rule 65(a)(2), on the understanding that they might file additional briefs.

2. Massachusetts law provides several methods whereby a defendant can dissolve, or decrease the amount of property covered by, the attachment. The defendant may post bond conditioned on his paying any judgment within thirty days after its entry, c. 223, § 120. This procedure

would, of course, entail the cost of a premium for a defendant. There is also a provision whereby "excessive and unreasonable" attachments may be reduced, c. 223, § 114; but this relief may be elusive, because the excessiveness or unreasonableness is judged only in relation to the amount of the claim as stated by the plaintiff, which may be wholly unrealistic; moreover, the language of § 114 implies that its relief is limited to those cases where the claims are in a liquidated or easily ascertainable amount.

There is no more elastic concept in American jurisprudence than that of due process. Not only has the concept been greatly broadened over the years, but the requirements of due process also vary from situation to situation at any given time. Mullane v. Central Hanover Bank & Tr. Co., 1950, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865. What is "due" under one set of circumstances may not be "due" under another. At core, however, the meaning of procedural due process has been that "parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified," Baldwin v. Hale, 1864, 1 Wall. 223, 68 U.S. 223, 233, 17 L.Ed. 531, in a manner and at a time that are meaningful, Armstrong v. Manzo, 1965, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62. A few short years ago a three-judge court would have acted boldly were it to declare that the trustee process sections of Massachusetts law were constitutionally deficient, for it was not clear whether due process "rights" included the unrestricted use of property for a potentially short time. Recent Supreme Court decisions, however, have made it plain that the Massachusetts laws here attacked do not pass constitutional muster.

In Sniadach v. Family Finance Corporation, 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, the Supreme Court held that a Wisconsin statute allowing a creditor, with no special need, to garnish the wages of his alleged debtor prior to a hearing violated the dictates of due process. The opinion of the Court noted that garnishment visits special hardship on the poor and asserted that wages are a special form of property, even a temporary loss of which could "drive a wage-earning family to the wall." 395 U.S. at 341–342, 89 S.Ct. at 1823 (footnote omitted). The Sniadach case is thus directly on point here insofar as the trustee process section of Massachusetts law authorizes the garnishment of wages, which it does, Mass.G.L. c. 246, § 24. In Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, the Court recently expanded the Sniadach rule, stating that the principles of procedural due process cannot be applied on the basis of distinctions between different kinds of property, 407 U.S. at 88, 92 S.Ct. 1983. The Court explained: "It is not the business of a court adjudicating due process rights to make its own critical evaluation of [marketplace] choices and protect only the ones that, by its own lights, are 'necessary.'" Id. The Court thereby implicitly dismissed the idea that Sniadach was predicated solely on the importance of wages to the poor and suggested that Sniadach was applicable to all property whose use is restricted to any degree.

The Court in Fuentes cautioned that its narrow holding—that prejudgment replevin provisions violate due process "insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor," —was not absolute. For example, no hearing would be required where attachment was necessary to secure quasi in rem jurisdiction, to guard against a bank failure, or to protect the public against dangerous products. Absent some such justification, reflecting an "important governmental or general public interest," however, a defendant's property could not be subject to attachment unless he had an opportunity to contest at least the probable validity of the underlying claim before the attachment, citing Sniadach v. Family Finance Corp., 1969, 395 U.S. at 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (Harlan, J., concurring).

The Fuentes Court was disturbed by several characteristics of the Florida and Pennsylvania statutes under attack; and what the Court said about them is equally applicable here. All the statutes failed to serve an important public interest, involving instead merely the intervention of state machinery in private disputes. The applicability of the statutes was not predicated on a finding that prompt action was necessary. In-

deed, no such finding is necessary under any of the statutes; the statutes

> "abdicate effective state control over state power. Private parties, serving their own private advantage, may unilaterally invoke state power to replevy goods from another. No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The state acts largely in the dark." (footnote omitted). 407 U.S. at 93, 92 S.Ct. at 2001.

It is true that the *Fuentes* case involved replevin, while under the Massachusetts statutes trustee process does not entail giving the goods over to the plaintiff. But trustee process may work a substantial hardship on defendants by, as here for example, freezing their bank accounts and forcing them to borrow money in order to live. Not all trustee process actions may have this result, but what is important is that the statutes are not drafted to preclude this possibility. It is thus beyond dispute that trustee process puts restrictions on a defendant's use of his property.

■ Having tested the trustee process procedure against the principles that have guided the Supreme Court's determinations of what process is due in prejudgment garnishment and replevin cases, we find that the trustee process sections of the Massachusetts statutes are unconstitutional on their face, and we accordingly enjoin their further enforcement insofar as they deny defendants notice and hearing before prejudgment attachments by way of trustee process are made.

■ The Harvard Trust Company, a defendant in one of these cases, did not dispute the unconstitutionality of trustee process, but urged that any final judgment be prospective only in its effect. We concur with its position that a retrospective judgment would cast doubt on the validity of all civil actions now pending in Massachusetts that were started by way of trustee process. Cf. Eaton v. Walker, 1923, 244 Mass. 23, 138 N.E. 798. Therefore, our decree will have no effect on actions—other than the actions at bar—started in that manner prior to the effective date of our decree.[3] Nor will it have any effect on cases where state courts order trustees to be charged and made to pay over to plaintiffs amounts held on attachments made prior to the effective date of the decree.

For the foregoing reasons, a judgment will issue declaring chapter 246 of the General Laws of Massachusetts unconstitutional and an injunction will issue permanently restraining the defendants from enforcing the provisions of chapter 246 insofar as it denies defendants notice and an opportunity for hearing before their property is attached by means of trustee process.

## SUPPLEMENTAL MEMORANDUM

In these companion cases the plaintiffs purported to sue as representatives of the class of all defendants in state court proceedings that were begun by writ of trustee process attaching the defendants' property. And the plaintiffs also purported to sue the defendant court clerks as representatives of all state

---

3. It is not, of course, for this court to frame a statute for Massachusetts that would satisfy the demands of due process. But it may be helpful to point out that the *Fuentes* opinion, 407 U.S. at 95, 92 S.Ct. 1983, adopted the following statement from the late Mr. Justice Harlan's concurrence in *Sniadach*:

> "[D]ue process is afforded only by the kind of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property . . . . ."

quoting Sniadach v. Family Finance Corp., 1969, 395 U.S. at 343, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (emphasis in original).

**746**

court clerks who are authorized to issue trustee process writs pursuant to Mass. G.L. c. 246. In its Memorandum of Decision on Issuance of Preliminary Injunction, dated June 22, 1972, in Schneider v. Margossian, the court reserved judgment on these two class action issues. The court did not mention these issues in its Memorandum of Decision in these companion cases, dated September 22, 1972, because it did not deem class certification warranted by the nature and explanation of the ordered relief. What the court thought implicit perhaps should have been made explicit, and now, at the request of plaintiff's counsel by letter dated October 2, 1972, shall be made so.

■■ As to the plaintiffs, the court ruled that the relief would not be retroactive; except·for the plaintiffs' own actions the judgment of permanent injunction has no effect on any state court actions instituted by way of trustee process pursuant to Mass.G.L. c. 246. This ruling necessarily implied that the court was not permitting the plaintiffs to sue as representatives of a class. In this regard, the court points out that it is immaterial whether plaintiffs satisfy the requirements set out in Fed.R.Civ.P. 23. As the use of the word "may" in Rule 23(b) suggests, a court is not bound to let a case continue as a class action because the requirements of Rule 23 are met; under the circumstances of these cases, where retroactive relief is inappropriate, no purpose is served by allowing the plaintiffs to sue as representatives of a class. Nor have plaintiffs convinced us that a representative status, which may be "material in determining whether or not the plaintiffs will appeal", should now be declared.

■ As to certifying defendant clerk as representative of all clerks similarly situated, even though it were proper to do so at this juncture, and even though

it were more clear that a defendant class, in the absence of a plaintiff class, is described by either Rule 23(b)(1) or (2), we are not persuaded by the prospect of other district court clerks proceeding in disregard of our decision and continuing to enforce chapter 246. The Department of the Attorney General has notified us by letter dated October 10, 1972 that it has communicated with the various courts of the Commonwealth regarding this court's declaratory judgment and injunction dated September 22, 1972 and has advised the sheriffs of the Commonwealth that trustee writs dated after September 21, 1972 are not to be served. As we hereinafter note, the Attorney General's office has taken an unnecessarily broad view of the scope of our decision, but in any event an effective step in terms of precluding a proliferation of litigation.

■ In the court's declaratory judgment and injunction dated September 22, 1972, chapter 246 was held unconstitutional "insofar as it denies defendants in civil actions notice and an opportunity to be heard prior to the making of attachments on their property by way of trustee process." The Assistant Attorney General's letter of October 10 states that his office has "taken the position that Chapter 246 has been struck down in its entirety" and inquires whether this conclusion is consistent with the court's order. It is not. As stated correctly elsewhere in the same letter, the court's decree indicated "continued viability in M.G.L. c. 246 when there is notice and an opportunity for hearing" of the type described in controlling decisions of the Supreme Court. Such an instance is found in c. 246, § 32, ¶ 8, as amended, authorizing attachments in certain actions brought upon judgments. Obviously § 32, ¶ 8, as it provides for trustee process based upon claims which have already been adjudicated, is unaffected by the decision in this case.