**HIGLEY HILL, INC., et al., Plaintiffs,**

v.

**Alfred C. KNIGHT et al.,
Defendants.**

**Civ. A. No. 73–675–G.**

United States District Court,
D. Massachusetts.

May 16, 1973.

**204**

Robert W. MacDonald, Bourne, Mass., for plaintiffs.

Maurice M. Goldman, Brewster, Mass., Walter H. Mayo, III, and Jefrey Binder, Asst. Attys. Gen., Boston, Mass., for defendants.

Before CAMPBELL, Circuit Judge, GARRITY, District Judge and JULIAN, Senior District Judge.

## MEMORANDUM AND ORDER

LEVIN H. CAMPBELL, Circuit Judge.

A three-judge court having been convened, the cause came on for hearing on May 8, 1973, upon Plaintiffs' Motion for Preliminary Injunction and upon a Motion to Abstain filed by the Attorney General of Massachusetts on behalf of the Defendants Knight, Weekes and Tonis.

Plaintiffs have commenced this action under 42 U.S.C. § 1983 seeking damages and a "preliminary mandatory injunction" discharging attachments of their real estate and bank accounts and injunctive orders in the nature of equitable attachments, issued by the Presiding Justice of the Barnstable County Probate Court on February 14, 1972. The attachments and orders (hereinafter all referred to as the "attachments") were issued upon prayers in a Bill in Equity filed on the same date by Defendants Hill and Lawrence Properties, Inc. against the present Plaintiffs. Before ordering the attachments, which were to the value of $100,000, the Probate Justice held in chambers an *ex parte* hearing attended by the attorney for the state plaintiffs, present Defendants, at which the court reviewed the sworn bill in equity and satisfied itself of the appropriateness of the requested attachments. However, no notice or hearing opportunity was then afforded to the Plaintiffs, none being required by the controlling Massachusetts statutory provisions. *See* M.G.L. c. 214, § 7; c. 215, § 6A. Service or process making the attachments and "catching" funds in certain of Plaintiffs' bank accounts thereafter occurred.

On the next day, February 15, the attorney for the Plaintiffs filed a motion to discharge the trustees and later a motion to dissolve preliminary injunction and discharge real estate attachments. These motions were argued in the late winter and spring of 1972. The Probate Court allowed the attachments against the Plaintiffs to stand, but certain attachments against other state defendants in the same case were reduced.

Other preliminary proceedings took place in the Probate Court; demurrers were filed, argued and overruled; depositions were noticed. Plaintiffs urged the court on other occasions to reduce or dissolve the attachments, to no avail. The case was then partially tried before the Probate Justice who had authorized the attachments. After an abortive settlement attempt, the judge recused himself, and declared a mistrial. The case has been assigned to a new judge, and is to be tried shortly. We are informed that the motions to reduce or dissolve the attachments are to be heard once more, this time by the new judge, on May 17, 1973.

Had the attachments taken place after the Supreme Court's decision in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the issue would simply be whether their issuance *ex parte*, without prior notice to Plaintiffs and opportunity for hearing, violated principles of due process enunciated in that case. Unlike the process in *Fuentes* and in Schneider v. Margossian,

349 F.Supp. 741 (D.Mass.1972),[1] the present attachments were issued incident to the commencement of an equity suit upon the express order of a state judge. It can be argued that the additional element of judicial supervision coupled with possible other distinguishing features causes the procedure to fall within the class of "extraordinary situations" justifying postponing notice and opportunity for a hearing. *Fuentes, supra,* 407 U.S. at 90, 92 S.Ct. 1983. However, the *Fuentes* court indicated that such exceptions must be pursuant to narrowly drawn statutes designed for unusual situations. *Id.* at 93, 92 S.Ct. 1983. We need not decide the point finally at this preliminary stage; it is enough to say that Plaintiffs' chances of prevailing on it are substantial.

The more difficult issue here is the effect to give to the *Fuentes* rule in a case (1) where the allegedly illegal attachments were made three and a half months before *Fuentes* was decided, and (2) where extensive state court hearings, including hearings at which the Plaintiffs urged reduction or dissolution of the attachments, have already taken place (some of them also before *Fuentes* was decided). Were we to accept a simplistic approach and strike down attachments issued prior to *Fuentes* under existing Massachusetts laws, we would frustrate the legitimate expectations of many Massachusetts state litigants, would invite confusion and uncertainty in the conduct of continuing litigation, and might, in the case of property sold pursuant to real estate attachments, create serious title problems. Somewhat similar considerations doubtless led the *Schneider* court to announce that its judgment was not retrospective:

> We concur with [the] position that a retrospective judgment would cast doubt on the validity of all civil actions now pending in Massachusetts that were started by way of trustee process. . . . Therefore, our de-

cree will have no effect on actions—other than the actions at bar—started in that manner prior to the effective date of our decree. 349 F.Supp. at 745.

The analogy with *Schneider* is not, of course, complete; the present suit was begun by the filing of a Bill in Equity, not a writ and summons. It raises, however, the same problem of applying retrospectively a Constitutional rule of which neither Massachusetts attorneys nor courts were aware until June 12, 1972, the date that the *Fuentes* opinion was handed down. After *Fuentes,* the bar, the legislature and the courts were on notice that the long-established Massachusetts pre-judgment attachments rules were, at very least, suspect. They knew, or should have known, that attachments made without notice and hearing opportunity were governed by principles spelled out in *Fuentes.* Accordingly, state plaintiffs generally can have little complaint if such later attachments are invalidated.

But prior to *Fuentes,* attorneys would have been derelict in their duty to clients had they not utilized clear and time-tested statutory attachment remedies when commencing a suit. In the present case, all process was issued upon the express authority of the Presiding Justice of one of the state's probate courts. Neither he nor the Defendants' attorney had reason to believe that they were engaging in unconstitutional conduct. It is true that there were rumblings of constitutional change. *See* Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). But the district courts reversed in *Fuentes* had held that *Sniadach* and *Goldberg* "established no more than that a prior hearing is required with respect to the deprivation of such basically 'necessary' items

---

1. *Schneider* held unconstitutional M.G.L. c. 246, § 1 et seq., permitting pre-judgment trustee attachments to be made at

the unsupervised discretion of plaintiffs, without notice and hearing.

as wages and welfare benefits." *Fuentes, supra,* 407 U.S. at 88, 92 S.Ct. at 1998. Justice White,[2] who with the Chief Justice and Justice Blackmun wrote a sharp dissent in *Fuentes,* was not of the opinion that those earlier cases led inescapably to *Fuentes. Id.* at 101, 92 S.Ct 1983. We cannot expect the ordinary practitioner or judge before *Fuentes* to have ignored, or to have thought that he might have to ignore, the recognized procedures established under Massachusetts law.

The foregoing considerations are relevant to deciding whether to apply *Fuentes* retroactively to attachments made before that case was decided. In Chevron Oil Co. v. Huson, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), the Supreme Court stated that three factors were to be considered in deciding whether a new rule is to be retroactive:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' . . . Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of

nonretroactivity.' . . . [citations omitted][3]

■ Except in one aspect hereinafter mentioned, we believe that the *Fuentes* rule should not be retroactively applied to Massachusetts attachments of real estate, trustee attachments or equitable attachments. The rule, as we have indicated, was not clearly foreshadowed. Attempted retrospective application will not further its operation; indeed the limited resources of state and federal courts are better directed towards securing compliance with the new rule in post-*Fuentes* cases than in unravelling mature and possibly ancient litigation commenced under former law. Finally, plaintiffs will be subjected to the automatic destruction of attachments needed to afford them reasonable security regardless of the merits of their claims. Undoing such preexisting arrangements would work substantial hardship on creditors who reasonably relied upon lawful Massachusetts procedures. Moreover, a mechanistically retroactive application might leave unsettled the title to real estate sold at judicial sales, and the status of judgments already secured. *See* Cipriano v. Houma, 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.3d 647 (1969).

■ We would make but one exception to non-retroactivity. We think that a pre-*Fuentes* defendant is Constitutionally entitled, in any proceeding where his property remains attached, to a fully adequate hearing upon request—if one has never been afforded—in which the reasonableness of the attachment is carefully determined *de novo* in light of the probable validity of the underlying claim. *Fuentes, supra,* 407 U.S. at 97, 92 S.Ct. 1983. Massachusetts law already provides for a hearing upon a defendant's motion to reduce or discharge.

---

2. The decision in *Fuentes* was 4–3, Justices Powell and Rehnquist not participating.

3. The Supreme Court has observed that "there seems to be no impediment—constitutional or philosophical—to the use of [a prospective] rule in the constitutional area where the exigencies of the situation require such an application." Linkletter v. Walker, 381 U.S. 618, 628, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 60 (1965).

M.G.L. c. 223, § 114. *But see* Schneider, *supra,* 340 F.Supp. at 743, n. 2, suggesting that the purely statutory remedy may be unduly limited. An adequate hearing would determine whether the claim has probable merit and what damages are likely to be recovered. If such a hearing is not afforded reasonably expeditiously upon request, we believe a federal court remedy may well exist. We recognize that such a hearing would be inadequate to save a post-*Fuentes* attachment from Constitutional attack, assuming the attachment was obtained without notice and opportunity for hearing. But it would afford to pre-*Fuentes* defendants the assurance of present fairness without penalizing plaintiffs for non-compliance with previously non-existent rules.

Since the attachments here in question were made before the decision in *Fuentes,* their initial issuance *ex parte* was not fatal. However, we remain unclear to what extent the plaintiffs have yet received a full and fair hearing in the Probate Court on the reasonableness of the attachments. The court made no explicit rulings on Plaintiffs' three attempts to secure dissolution or reduction. However, we are told that a new hearing before a new judge is scheduled for May 17. Under the principles we have enunciated, we withhold action on Plaintiffs' Motion for Preliminary Injunction until after the Probate Court hearing is held and the motions to reduce or dissolve decided. Thereafter, we shall not interfere with such attachments as the Probate Court may allow to stand, assuming their reasonableness has been passed upon *de novo* and with consideration of the probable actual worth and merit of the underlying claim. Should a hearing of less than Constitutional adequacy be held, the Plaintiffs may renew their motion for injunctive relief.

Motion for Preliminary Injunction is denied at this time.

The Motion to Abstain is denied.