367 Mass. 708 (1975)
328 N.E.2d 492
RALPH McINTYRE & another
vs.
ASSOCIATES FINANCIAL SERVICES COMPANY OF MASSACHUSETTS, INC.
Supreme Judicial Court of Massachusetts, Worcester.
February 4, 1975.
May 8, 1975.
Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.
Arthur Goldstein (Alan D. Goldstein with him) for the defendant.
Austin T. Philbin (Austin A. Philbin with him) for the plaintiffs.
HENNESSEY, J.
This appeal from a final decree entered in the Superior Court raises the issue whether the holdings interpreting the requirements of due process of law established in Fuentes v. Shevin, 407 U.S. 67 (1972), should be applied retroactively to invalidate a real estate attachment which was made before the date of the Fuentes case. The attachment was recorded on December 31, 1971, and the Fuentes case was decided on June 12, 1972.
The facts, as summarized from a statement of agreed facts, are as follows. On December 31, 1971, Sylvester *709 A. Knoll and Marguerite Knoll were the owners of a house and land on Mill Street in Lancaster, Massachusetts. On December 31, 1971, there was filed in the Worcester district registry of deeds an attachment of the Knolls' land by writ dated December 30, 1971, brought by Associates Financial Services Company of Massachusetts, Inc. (Associates). The writ was returnable to the Central District Court of Worcester on January 24, 1972, and bore an ad damnum of $6,000 for an action in contract. There was no service of process, notice or hearing held prior to a deputy sheriff's depositing the writ of attachment in the registry of deeds. The writ was duly recorded. It was later entered in the Central District Court of Worcester on the return date without service on the Knolls.
By deed dated February 29, 1972, the Knolls conveyed the same house and land for a price, stated in the deed, of $19,000, to Ralph A. McIntyre and Madora A. McIntyre. The deed was recorded with the Worcester district registry of deeds on March 7, 1972. The deed was a quit claim deed and did not mention the previously recorded attachment as an encumbrance of record. On May 30, 1972, a motion for a special precept was allowed, the motion having been filed on or about May 13, 1972. The special precept was returnable on July 10, 1972; was served on Sylvester A. Knoll on June 24, 1972; and was filed in the Central District Court of Worcester on June 29, 1972. An answer was filed on behalf of the Knolls.
On or about December 6, 1972, the McIntyres were notified through counsel, with copies to the Knolls, and to the first mortgagee for the McIntyres, the Clinton Savings Bank, that Associates had recorded an attachment in the registry of deeds, and that Associates intended to foreclose on the attachment if the Knolls' debt was not paid. On or about May 8, 1973, an affidavit of no defense was filed against Sylvester A. Knoll, and marked for hearing on May 17, 1973, with notice to the Knolls' attorney and to the McIntyres and their mortgagee bank. *710 On May 15, 1973, the McIntyres filed a bill in equity in the Superior Court asking that the attachment be declared invalid.
By a series of proceedings thereafter, judgment was entered in the Central District Court of Worcester on June 15, 1973, and execution was issued on June 20, 1973, against the Knolls in the total amount of $3,129.36. Levy was made and recorded in the Worcester district registry of deeds on July 2, 1973. Further proceedings were suspended pursuant to a preliminary injunction which had been entered by a judge of the Superior Court on the petition of the McIntyres. The preliminary injunction was made permanent by the final decree which is the subject of this appeal. The final decree permanently enjoined Associates from satisfying its judgment by execution on the attached property and from proceeding against the McIntyres. The Knolls were notified of all of these proceedings in the District and Superior Courts, but they failed to appear at any time.
We conclude that there should be no retroactive application of the principles of the Fuentes case as to invalidate the real estate attachment.
We turn first to the issue, as argued by the parties, whether relevant Massachusetts law, particularly, G.L.c. 223, §§ 42 and 62-66, is violative of the due process clause of the Fourteenth Amendment to the United States Constitution, by permitting attachments of real property without prior notice to the owners and an opportunity for hearing. The holdings in 1972 of Fuentes v. Shevin, supra, support that conclusion, as do the decisions of other Federal courts, construing Massachusetts law in light of the Fuentes case.[1] However, the *711 case of Mitchell v. W.T. Grant Co. 416 U.S. 600 (1974), cast serious doubt on the effect of the Fuentes case, and prompted some Justices of the Supreme Court to conclude that the Fuentes case had been overruled. On January 22, 1975, however, the case of North Ga. Finishing, Inc. v. Di-Chem, Inc. 419 U.S. 601 (1975), apparently reaffirmed the Fuentes principles, while distinguishing and reconciling the Mitchell case.[2]
Accordingly, it is with confidence that we regard the Fuentes case as viable. Further, we assume, without deciding, that attachments of a debtor's real property, imposed after the date (June 12, 1972) of the Fuentes case and without prior notice to the debtor and opportunity for hearing, would be invalid under the United States Constitution as violative of due process of law. We need not decide the due process issue, however, because our decision here rests on our determination that the principles of the Fuentes case are nonretroactive.
For purposes of discussion, also, we assume that the McIntyres have standing to assert due process contentions here, although it can be argued that the McIntyres are improperly relying on the constitutional rights of others. Cf. Yazoo & Miss. Valley R.R. v. Jackson Vinegar Co. 226 U.S. 217, 219 (1912); Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571, 576 (1915); Bode v. Barrett, 344 U.S. *712 583, 585 (1953). Accord, Goldstein v. United States, 316 U.S. 114 (1942); Simmons v. United States, 390 U.S. 377 (1968). But see Barrows v. Jackson, 346 U.S. 249 (1953). The attachment was recorded in the registry of deeds about two months before the McIntyres purchased the real estate. As matter of law they had constructive notice of the lien when they acquired the ownership.[3]
We turn now to the issue of retroactivity of the Fuentes rule. It has been said, in substance, that three factors should be considered in determining whether a new rule is to be retroactive, viz.: (1) whether a new principle has been established whose resolution was not clearly foreshadowed, (2) whether retroactive application will further the rule, and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity. Chevron Oil Co. v. Huson, 404 U.S. 97, 106-107 (1971). See also Linkletter v. Walker, 381 U.S. 618, 628 (1965).
We hold that the Fuentes rule is not to be applied retroactively to attachments of real estate. We agree with the reasoning of the three judge Federal court which reached the same conclusion in Higley Hill, Inc. v. Knight, 360 F. Supp. 203, 206 (D. Mass. 1973), and, in an opinion written by Campbell, J., said as follows: "The rule, as we have indicated, was not clearly foreshadowed. Attempted retrospective application will not further its operation; indeed the limited resources of state and federal courts are better directed towards securing *713 compliance with the new rule in post-Fuentes cases than in unravelling mature and possibly ancient litigation commenced under former law. Finally, plaintiffs will be subjected to the automatic destruction of attachments needed to afford them reasonable security regardless of the merits of their claims. Undoing such preexisting arrangements would work substantial hardship on creditors who reasonably relied upon lawful Massachusetts procedures. Moreover, a mechanistically retroactive application might leave unsettled the title to real estate sold at judicial sales, and the status of judgments already secured."
We have no doubt that a debtor whose real estate was subjected to a pre-Fuentes attachment was entitled on application to an expeditious judicial hearing to determine the reasonableness of the attachment. See G.L.c. 223, § 114; Schneider v. Margossian, 349 F. Supp. at 743, n. 2 (D. Mass. 1972); Higley Hill, Inc. v. Knight, supra, at 207. No such relief is warranted here since judgment was entered against the Knolls on June 15, 1973, on an affidavit of no defense, the Knolls having failed to appear after notice of the proceedings. Nor did the Knolls appear at the subsequent proceedings in the Superior Court despite a summons served on one of them. It may be conclusively presumed from this background that the debt asserted against the Knolls was just in nature and amount.
The final decree is reversed, and a judgment is to be entered dissolving the injunction which presently restrains Associates from proceeding against the attached property. The judgment shall be consistent with this opinion in all other respects.
So ordered.
NOTES
[1] Schneider v. Margossian, 349 F. Supp. 741 (D. Mass. 1972). Bay State Harness Horse Racing & Breeding Assn. Inc. v. PPG Indus. Inc. 365 F. Supp. 1299 (D. Mass. 1973). Higley Hill, Inc. v. Knight, 360 F. Supp. 203 (D. Mass. 1973). These decisions, while not binding on us, are "entitled to our respect." Fiorentino v. Probate Court, 365 Mass. 13, 14 (1974).
[2] This sequence of cases, all decided within a three-year period, is of interest from several standpoints. Mr. Justice Stewart, writing for three dissenting Justices in the Mitchell case, said: "[T]he Court today has unmistakably overruled a considered decision [Fuentes] of this Court that is barely two years old, without pointing to any change ... that might justify this total disregard of stare decisis." 416 U.S. 629, 635 (1974). Cf. the statement in Commonwealth v. Horton, 365 Mass. 164, 176-177 (1974) (Hennessey, J., concurring): "Certainly constitutional interpretation must respond to social change, but this duty does not explain speedy overruling of new doctrines" (emphasis supplied). Later, in concurring in the North Ga. Finishing case, Mr. Justice Stewart, with credit to Samuel Clemens, wrote: "It is gratifying to note that my report of the demise of Fuentes v. Shevin ... [in the Mitchell case], seems to have been greatly exaggerated." 419 U.S. at 608 (1975).
[3] Indeed, the statement of agreed facts, and the entire record, disclose no disclaimer even of actual knowledge of the attachment by the McIntyres prior to their acquiring the property. It could be argued that an inference is warranted, and perhaps compelled, from a knowledge of the almost invariable procedures in real estate conveyances and the accompanying title searches, that the McIntyres were actually aware of the attachment prior to purchase of the property and that the purchase price was appropriately adjusted on account of the attachment.