Swan, J.
On June 28,2003, the plaintiff entered the defendant’s supermarket and slipped and fell in the frozen foods department, injuring her knee and back. She filed this suit to recover damages for the defendants alleged negligence. The defendant successfully moved for summary judgment, and the plaintiff appealed that Mass. R. Civ. E, Rule 56 ruling.
Viewing the evidence in the light most favorable to the plaintiff, Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), the record indicates the following. The plaintiff, Kathleen Smart (“Smart”), arrived at the Tewksbury supermarket owned by the defendant, Demoulas Supermarkets, Inc. (“Market Basket”), in late morning and selected a shopping cart After visiting the meat department, she proceeded to the deli counter at the back of the store and took a ticket. Since her number was “faraway,” she left her cart and walked down aisle no.l toward the front of the store to get tuna fish. Although the cans of tuna fish were on the left side of the aisle, Smart kept to the right, close to the frozen food case,[1] as another woman was pushing a shopping cart toward Smart on the left-hand side. When Smart was about even with the woman, Smart slipped, falling onto her left kneecap, with one leg going forward and the other back. Her hands and knee felt wet, “in the middle” between “a little damp versus lots of water.” The other woman was unable to help Smart to her feet and went for help. As she tried to stand up, Smart “glance [d] “ at the floor and saw clear water, with no markings, debris, paper, footprints, bubbles, stickiness, or grit. A store employee responded and, without slipping or sliding, helped Smart to her feet. The other woman told the employee that there was water on the floor; it appeared to Smart that “he was learning this for the first time.”
John Gordon (“Gordon”), who has been the store director for thirteen years, testified at his deposition that Smart was standing when he arrived at the scene.[2] He saw a small puddle of water about the size of his fist and about a centimeter deep. Every night, according to Gordon, the supermarket floor is cleaned and polished; the person assigned “would dry mop the store of loose papers and debris. He has a floor machine that he would use — basically wash the floor, and then a polisher.” In addition, said Gordon, “throughout the day it is cleaned as we see fit — or as I see *106 fit.” Most of the employees “are at some point trained to supervise and watch for the floor, particularly breakages — something that might end up on the floor... [and] would know, if something happens, to alert someone to take care of it.” On the morning of Smart’s fall, there had been no reports of puddles in aisle no. 1. To the best of Gordon’s knowledge, there had been no leakage from the coffin cases.
1. ‘The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.” Augat, Inc., supra at 120. Market Basket submits that summary judgment was properly entered on the authority of Oliveri v. Massachusetts Bay Transp. Auth, 363 Mass. 165, 166-167 (1973), and other cases that subscribe to the “traditional approach” to premises liability. We agree.
The traditional approach, which was relied on by both the parties and the trial court, is stated in the RESTATEMENT (SECOND) OF TORTS §343,215-216 (1965) as follows:
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.
In the case of a supermarket, a plaintiff must prove that the “store caused a substance, matter, or item to be on the floor; the store operator had actual knowledge of its presence; or the substance, matter, or item had been on the floor so long that the store operator should have been aware of the condition.” Sheehan v. Roche Bros. Supermarkets, Inc., 448 Mass. 780, 782-783 (2007). See Mounsey v. Ellard, 363 Mass. 693, 708 (1973).
Undeniably, Smart slipped on Market Basket’s floor. She failed, however, to prove causation. Whether the fall was caused by the small, fist-sized puddle of water — first noticed by Smart after her fall when she felt “in the middle” between “a little damp versus lots of water” — is merely speculative.[3] Even if it is assumed that the water caused the fall, no proof was presented connecting any activity by Market Basket to the presence of the water, whether by application or spilling by an employee, condensation from the coffin case, or the like. There is also no evidence that Market Basket knew of the water’s presence. Indeed, Smart acknowledged in her deposition that the store employee who assisted her, when told of the water, looked like “he was learning this for the first time.” Nor is it known whether the water was on the floor for a sufficient duration to charge Market Basket with constructive notice of both its presence and the need to remove it. The evidence, in fact, suggests the contrary. Even after Smart’s knee and hands had apparently displaced part of the puddle, the water still had none of the indicia of having been there a long time. Smart herself described it as having no markings, paper, footprints, debris, bubbles, stickiness, or grit, i.e., the type of conditions or characteristics that have been held to be sufficient evidence of the duration of the defect and, *107 thus, of constructive notice to the defendant. See, e.g. Gallagher v. Stop & Shop, Inc., 332 Mass. 560 (1955) (dirty, sloppy, messy ice cream, with heel marks, covering 12 inches of floor); Hudson v. F.W. Woolworth Co., 275 Mass. 469 (1931) (piece of dirty, grimy candy, with heel marks); Anjou v. Boston Elevated Ry., 208 Mass. 273 (1911) (dry, gritty, dirty, decayed banana peel).
In Leary v. Jordan Marsh Co., 322 Mass. 309 (1948), the plaintiff slipped or fell well inside the defendant’s store on a rainy day. She did not know what caused her to fall. Her companion, however, saw “three little pools of water each about the size of a dinner plate” with “dry mud around the edge of one of the pools” in the location of the fall. Id. at 309-310. There were also two skid marks that appeared to have been made by a heel. Upholding a verdict for the defendant, the Court held that “the mere presence of [dirty] water... has no tendency to prove that it had been on the floor long enough so that the defendant should have seen it and mopped it up.” Id. at 310-311, quoting Tariff v. S.S. Kresge Co., 299 Mass. 129, 130 (1937). Smart’s case, involving only one small puddle and no dirt, is far less compelling. Summary judgment for Market Basket was properly entered.
2. Smart urges us to apply the rule set forth in Sheehan v. Roche Bros. Supermarkets, Inc., supra, decided over a year after the judgment in this case, in which the Supreme Judicial Court reversed summary judgment for a supermarket entered on the basis of the traditional approach to premises liability, and instead adopted the “mode of operation approach” for certain slip and fall cases. The latter approach eliminates the requirement of proving “that the owner or the owner’s employees had actual or constructive notice of the dangerous condition,” id. at 790, or proving “the exact failure that caused the accident, id., and instead requires the plaintiff to prove that “the owner could reasonably foresee or anticipate that a foreseeable risk stemming from the owner’s mode of operation could occur,” id. at 791, and that the owner failed to exercise “reasonable care in maintaining the premise in a safe condition commensurate with these foreseeable risks.” Id. Spillage and breakage caused by careless customers in self-service stores, as well as their “focus on displayed items that are arranged specifically to attract their attention, often making them unaware of what might be on the floor,” mandated, in the Court’s view, the adoption of a standard of reasonable foreseeability instead of constructive or actual notice. Id. at 784-785.
Assuming that Sheehan is retroactive,[4] we find that the rule it enunciates does not apply to the facts of this case. The Sheehan rule assumes that the owner of a *108 “self-service establishment has actual notice that his mode of operation creates certain risks of harm to his customers. Since a self-service operation involves the reasonable probability that these risks will occur, these risks are foreseeable.” Id. at 786, quoting Pimentel v. Roundup Co., 100 Wash. 2d 39, 43 (1983). For example, in Sheehan, the plaintiff slipped on a small piece of grape and clear liquid, in a section of the store “where grapes were packaged in individually sealed bags, easily opened by the hand,... located on a tiered display table, surrounded by mats, in the produce department.” Id. at 781. The store’s mode of operation, that is, the method of displaying the fruit, and its accessibility to customers, created the risk of an errant grape rolling to the floor and causing a hazardous condition. In Gilhooley v. Star Mkt. Co., 400 Mass. 205 (1987), a case that foreshadowed the ultimate adoption of the mode of operation approach, the plaintiff slipped on a green pepper. The peppers in the store
were stacked on top of one another in a diagonal fashion in plastic bins on counters. The bins slanted down toward the aisle. Customers and employees sometimes dropped vegetables and fruit onto the floor, and sometimes vegetables and fruit rolled onto the floor when customers or employees touched them. Produce “constantly’ had to be taken off the floor.
Id. at 208. While affirming a defendant’s verdict because there was no showing of noncompliance with industry standards, inadequate monitoring, or “sloppy or precarious” pepper stacking, the Court went on to note that
in an appropriate case, the keeper of a grocery store may be liable to a customer who slips on produce that is on the floor because of the storekeeper’s negligent marketing and display thereof. It is not always necessary for liability that the produce have been on the floor long enough for the storekeeper to have had a reasonable opportunity to have seen and removed it (emphasis supplied).
Id. In this case, the puddle of water, if indeed it was the cause of Smart’s fall, cannot be connected to customers’ careless handling of produce, or containers. No issue of display, or marketing of store product, or indeed anything having to do with Market Basket’s mode of operation, is present. Analyzing this case in accordance with Sheehan produces, therefore, the same result.
Judgment affirmed.
So ordered.

 The frozen food case is known as a “coffin case” in supermarket parlance.

 The record is unclear whether Gordon was the employee who helped Smart to her feet.

 In her deposition, Smart said, “I slipped on water and fell on my knee.” Her conclusory statement is unsupported by any other evidence.

 “Decisional law is generally applied ‘retroactively to past events,” Schrottman v. Barnicle, 386 Mass. 627, 631 (1982), with certain exceptions, such as the creation of a new principle not clearly foreshadowed or the imposition of hardship or injustice. McIntyre v. Associates Fin. Servs. Co. of Mass., Inc., 367 Mass. 708, 712 (1975), citing Chevron Oil Co. v. Huson, 404 U.S. 97, 106-107 (1971). The mode of operation approach was foreshadowed by comment e to the RESTATEMENT (SECOND) OF TORTS §343 (1965), Sheehan, supra at 788, by its adoption in nineteen other jurisdictions, id. at 785 n.5, and by the Supreme Judicial Court itself in Gilhooley v. Star Mkt. Co., 400 Mass. 205 (1987). Moreover, Sheehan itself did not pronounce a “wholly new law, but merely a refinement of the elements of proof in premises liability cases,” id. at 791, n.9, to bring the law into conformity with current retail practices. As indicated below, however, we conclude that the new rule is inapplicable in this matter.