## Adoption of Gabe
(and one companion case[1]).

No. 12-P-1237.

Berkshire. March 4, 2013. - September 25, 2013.

Present: Berry, Sikora, & Milkey, JJ.

*Adoption,* Dispensing with parent's consent. *Due Process of Law,* Adoption, Assistance of counsel. *Constitutional Law,* Assistance of counsel, Retroactivity of judicial holding, Waiver of constitutional rights. *Parent and Child,* Adoption, Dispensing with parent's consent to adoption. *Practice, Civil,* Assistance of counsel, Waiver. *Retroactivity of Judicial Holding.*

This court concluded that limited retroactive application of a decision of the Supreme Judicial Court was required in termination of parental rights and adoption cases not finally adjudicated at the time of the announcement of the decision, where that decision, holding that the indigent parent in a termination of parental rights and adoption proceeding brought by a private party, as well as the children proposed for adoption in such a proceeding, were entitled under due process and equal protection principles to the appointment of counsel, established a right that was reasonably foreseeable; where limited retroactivity would serve the purpose of the right to representation by counsel (i.e., more reliable determination of the merits of an adoption proceeding for the benefit of all parties and the court); and where limited retroactivity would not disrupt the deep reliances of a final adjudication; further, this court concluded that the father in a proceeding to dispense with parental consent to adoption had not waived his right to counsel. [289-293] Berry, J., dissenting.

Statement that the constitutional stature and practical importance of the right to counsel for parents facing termination of their rights to their children support the cautionary practices of a formal waiver colloquy and a written execution of such a waiver. [293-294]

Petitions filed in the Berkshire Division of the Probate and Family Court Department on June 17, 2010.

The cases were heard by *Richard A. Simons,* J.

*Dorothy Meyer Storrow* for the father.

*Mark A. Papirio* for the children.

*April Ann Knapp,* pro se.

[1]Adoption of Adam. The children's names are pseudonyms.

SIKORA, J. The issue on appeal is whether a biological father (father) had a right to counsel in the adoption proceeding terminating his parental rights. The father appeals from decrees of the Probate and Family Court (probate court) approving the adoption of his two sons and severing his parental rights and duties. The petitioners are the children's mother and stepfather. Throughout the proceeding in the probate court, the father did not retain counsel or receive appointed counsel.[2] Four days after the entry of the decrees, the Supreme Judicial Court in *Adoption of Meaghan*, 461 Mass. 1006, 1007-1008 (2012), held that an indigent parent in a termination and adoption proceeding brought by a private party is entitled to the appointment of counsel; that the children proposed for adoption hold the same entitlement; and that both rights rest on due process and equal protection principles. We conclude that the declaration of constitutional rights in *Meaghan* has retroactive application to cases of adoption that were not final at the time of its announcement. Therefore, we vacate the decrees and remand for a new trial at which the indigent father and the children will be entitled to appointed counsel.

*Background.* The trial judge received the following evidence.

1. *The parties.* Gabe and Adam were born in December of 2000 and April of 2004. Their parents never married. The father accumulated a history of verbal and physical abuse of the mother. During the course of their relationship, he continually demeaned her with vicious epithets. When the mother was pregnant with Gabe in September of 2000, the father pushed her down a flight of stairs during an argument. The father served ten months of incarceration for battery of the mother. In May of 2004, he pleaded guilty to another charge of assault against the mother, and served another period of incarceration. The mother also obtained a restraining order against him in 2003 after he had arrived unannounced at her home and had committed a battery against her. In 2004, while the mother was recovering from complications of her pregnancy with Adam, the father came to the hospital and engaged in a verbal confrontation with the mother. Security services escorted him from the hospital.

---

[2]The probate court subsequently found the father indigent and appointed counsel to conduct his appeal.

The father's drug use kept him from steady employment. His unstable income hindered his payment of child support obligations. At the time of trial in July of 2011, he was approximately $7,000 in arrears of support payments. His presence in the boys' lives was inconsistent. Despite the mother's efforts, he made infrequent and sporadic visits to the children. He served a third term of incarceration in 2009-2010. He had not visited the boys through the twenty-month period leading up to trial. The father's occasional contact and long absences caused the boys anticipation, disappointment, and anger.

When Gabe was four years old and Adam an infant, the mother's current husband (stepfather), entered their lives. He came from a stable family. As of the time of trial, he had maintained the same job for eleven years and he was earning approximately $60,000 per year. The stepfather and the mother married in June, 2009. They had a daughter, Lisa.[3] The mother testified that the stepfather was a positive influence on the children. He supported their activities, helped them with their schoolwork, and provided a consistent male presence in their lives. The boys had become attached to him. In the years before the trial, the mother, the stepfather, Gabe, Adam, and Lisa had functioned as a happy and cohesive family unit.

For the mother and the stepfather, adoption would serve several important goals: (1) health insurance coverage for the boys as a benefit of the stepfather's stable employment; (2) a consistent income stream for their support; (3) custody and care of the boys by the stepfather in the event of the mother's disability or death; and (4) formalization of the stepfather's positive paternal role in the boys' lives by change of their last name.

2. *Procedural history.* The mother and the stepfather filed petitions for adoption on June 17, 2010. G. L. c. 210, § 6. On March 23, 2011, the judge convened a pretrial conference. All parties appeared pro se. Four months before the hearing, the judge had issued a pretrial notice and order directing the parties to file, among other papers, a list of potential witnesses. Although the father had received the order, he did not prepare a list in advance of the pretrial conference. As a result, the judge pro-

---

[3] A pseudonym.

hibited him from calling any witnesses at trial. During the pretrial conference, the judge informed the parties that he planned to order the Department of Children and Families (DCF) to conduct a home study and that he would consider the resulting report as an exhibit.

A one-day trial went forward on July 20, 2011. All parties proceeded pro se. The judge neutrally assisted their presentations and asked questions of witnesses. The mother and the stepfather testified, and called three witnesses. The father called no witnesses; he testified, cross-examined certain witnesses, and made a brief closing statement. After trial, DCF completed its investigation of the home of the mother and stepfather, and on August 11, 2011, submitted its report to the court. The report gave strong support to the petitions for adoption. The judge made the report available to all parties and permitted them to file objections. No objections resulted. On January 26, 2012, the judge entered findings of fact and decrees of adoption terminating the father's parental rights and duties.

The judge found "by clear and convincing evidence that [the father was] currently unfit to assume the parental responsibility of caring for [Gabe] and [Adam]." He cited specifically the father's history of domestic abuse against the mother, sustained drug use, absence from the boys' lives, and support payment delinquency as grounds of unfitness, and the positive quality of the boys' lives with the mother and stepfather as demonstration of the children's best interests.

The father filed timely notices of appeal. In response to the father's affidavit of indigency, a different judge appointed appellate counsel for him. The mother and stepfather have represented themselves in this court. Appointed appellate counsel has represented the children's request for affirmance.

*Analysis.* On appeal the father argues, as alternative independent grounds for reversal, (1) that the right to counsel announced by the *Meaghan* decision extends retroactively to his trial and entitles him to a new trial with the assistance of an attorney; and (2) that the evidence at trial did not establish clearly and convincingly his unfitness. We agree that the rule of the *Meaghan* case applies with limited retroactivity to contested termination and adoption cases not finally adjudicated at the

time of its announcement. Final adjudication requires the exhaustion of all direct appellate process. Therefore we do not consider the second ground, the sufficiency of the evidence. Several lines of reasoning lead to our conclusion.

1. *Retroactivity: MacCormack standard.* In *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 656-658 (1996), a case determining a plaintiff's right to a jury trial under art. 15 of the Massachusetts Declaration of Rights, the court reasoned that the plaintiff would be entitled to the constitutional right because the Supreme Judicial Court had announced it after the plaintiff's nonjury trial (over his rejected claim for a jury) but during the pendency of his appeal on the preserved ground of jury entitlement, among others. "When a decision involves a matter of constitutional right, as it does here, considerations of constitutional principle with rare exceptions require retroactive application." *Id.* at 657. The retroactive entitlement did not extend beyond final adjudication. "Different considerations are at work where the judicial process has run its course, a final judgment reached, and a [party] . . . seeks to obtain the benefit of a new rule thereafter [by] a motion for a new trial." *Id.* at 658. A mechanical application of the *MacCormack* rationale supports the father's claim here of the denial of a right to representation.

2. *Retroactivity: McIntyre standard.* A more detailed formula governing retroactive extension of new constitutional rights originated in *McIntyre* v. *Associates Fin. Servs. Co. of Mass.*, 367 Mass. 708, 712 (1975) (rejecting all retroactive application of newly created due process right to hearing opportunity before imposition of real property attachment). Retroactivity would turn on three factors: "(1) whether a new principle has been established whose resolution was not clearly foreshadowed, (2) whether retroactive application will further the rule, and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity." *Id.* See *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 106-107 (1971). These criteria remain useful for those "rare" or close cases acknowledged by the *MacCormack* rule to deserve closer analysis. *MacCormack, supra* at 657. Applied here, they converge with the *MacCormack* standard to support retroactive extension to nonfinal cases.

Converted to more active expression, the *McIntyre* factors ask (1) whether the new right was reasonably foreseeable or unpredictably surprising; (2) whether retroactivity serves the presumptively valuable purpose of the new entitlement; and (3) whether retroactivity would unfairly inflict hardships, typically by disrupting reasonable reliances on the prior state of the law. Here the right to counsel for a parent confronting termination was reasonably foreseeable. The right to parenthood comprises a substantive due process interest deemed by the United States Supreme Court in 1983 to demand an elevated standard of clear and convincing evidence for its deprivation by the State. *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982). See *Adoption of Rory*, 80 Mass. App. Ct. 454, 457-458 (2011). In *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3-4 (1979), the court held that an indigent parent facing a termination proceeding brought by the State possessed a constitutional right to appointed counsel. The right arose from the due process clause of the Fourteenth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights (protection of a liberty interest in accordance with standing law). *Id.* at 3. A predictable next step would be the extension of the right to termination proceedings brought by a private party and requiring the judicial authority of the State for their accomplishment. See *Shelley* v. *Kraemer*, 334 U.S. 1, 14-18 (1948) (State court enforcement of private actions may constitute State action for due process and equal protection purposes).

Limited retroactivity would serve the purpose of the right to representation: more reliable determination of the merits of the adoption proceeding for the benefit of all parties (adoptive petitioners, confronted parent, and subject children) and the court. Appellate counsel has pointed out, and the transcript of the trial confirms, that the father was ill-equipped to offer evidence and argument in support of any mitigating or redemptive considerations in his behalf.[4]

---

[4]Counsel observes that the father lacked the capacity or prudence (1) to prepare for the pretrial conference; (2) to understand the pretrial order; (3) to call witnesses and to present evidence at trial; (4) to challenge the DCF home study report; (5) to assert improvement from his earlier failings, including domestic violence, substance abuse, support delinquency, and remoteness from the children; and (6) to marshal an effective summation.

In addition, competent representation assists the judge. His or her essential task is the determination of the best interests of the child proposed for adoption. See *Adoption of Tammy*, 416 Mass. 205, 210 (1993); *Adoption of Mariano*, 77 Mass. App. Ct. 656, 659 (2010). Those interests will include both the determination of the adoption and postadoption conditions (such as contact with the terminated parent). All competent information and argument from the parties serves that purpose; a one-sided trial will endanger it. In this instance, the adoption decision will bring life-altering consequence for six persons: the father, mother, stepfather, two boys, and their younger sister. The outcome should rest on the reliability of a competent adversary process.

Finally, the requirement now of representation and a new trial will cause disappointment to the mother and stepfather, but not the divestment of settled rights. It will not disrupt the deep reliances of a final adjudication. Our case is still alive and open. If it had reached finality so that the children were receiving the benefit of their stepfather's health insurance coverage, the assurance of his custody in the event of the disability or loss of their mother, and formalization of the relationship by the change of their names, the calculus of disruption, hardship, or unfairness would differ drastically. The results of the trial have not yet hardened into permanent expectations. On balance, then, the more detailed criteria of the *McIntyre* analysis confirm the application of the *MacCormack* rule; both favor the operation of limited retroactivity.[5]

3. *Structural nature of representation.* The nature of the right to, and benefit of, competent representation weighs also in favor of a rational degree of retroactivity. "The deprivation of the right to counsel during a critical stage of the criminal process is structural error; it is an error 'that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless.' " *Commonwealth* v. *Johnson*, 80

---

[5] Another consideration recommending the application of the newly announced right to nonfinal actions is visible in criminal litigation: equal treatment of equally situated cases. Open cases in trial courts and on appeal occupy the same unfinished status as the appealed case announcing the new law. No apparent justification would treat the other pending cases differently. See *Griffith* v. *Kentucky*, 479 U.S. 314, 323-324, 328 (1987); *Teague* v. *Lane*, 489 U.S. 288, 304-305 (1989).

Mass. App. Ct. 505, 511 (2011), quoting from *Commonwealth v. Godwin*, 60 Mass. App. Ct. 605, 609 (2004). In the criminal setting, structural error is per se error. It dispenses with the inquiry whether the error is harmless beyond a reasonable doubt, and presumes harm.

That doctrine does not control civil issues. However it affords a useful analogy. Structural error is presumptively harmful because its consequences can be pervasive, undetectable, and immeasurable. The loss of the assistance of competent counsel illustrates those risks. One can never reliably measure the harm resulting from the absence of effective assistance. We cannot know the specific value of a capable advocate to the father's case. That consideration, whether viewed independently or as an illustration of the second guideline of the *McIntyre* formula (the value of retroactive operation to the purpose of a new constitutional entitlement, here the provision of competent representation), contributes to our conclusion.

4. *Waiver.* a. *At trial.* Counsel for the children argues that the father waived his right to counsel. Waiver is the intentional relinquishment of a known right or privilege. See *Metropolitan Transit Authy.* v. *Railway Exp. Agency, Inc.*, 323 Mass. 707, 709 (1949); *Rose* v. *Regan*, 344 Mass. 223, 229 (1962). The record does not show the father's awareness of his right to counsel, or his intelligent and voluntary surrender of it. The law disfavors the implied waiver of constitutional rights. See *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938); *Spence* v. *Reeder*, 382 Mass. 398, 411-412 (1981). Intelligent waiver in this case is particularly improbable because the formal declaration of the right did not occur in *Meaghan* until six months after the trial. Case law had foreshadowed it, but not yet established it. See *Adoption of Willow*, 433 Mass. 636, 642 n.7 (2001).[6]

b. *Implementation.* As a matter of prudence, the constitutional stature and the practical importance of the right to counsel for parents facing termination of their rights to their children support the cautionary practices of (i) a formal waiver colloquy and (ii) a written execution of the waiver. See *Commonwealth* v.

---

[6]The judge here made a patient, concerted effort to permit the father to present his evidence and argument.

*Johnson, supra* at 511, citing Smith, Criminal Practice and Procedure §§ 19.37, 19.40 (3d ed. 2007).

*Conclusion.* The entitlement to representation announced in *Adoption of Meaghan*, 461 Mass. at 1007, applies to this case. If indigent, the father shall be entitled to the appointment of counsel at any new trial. The children also shall be entitled to the appointment of counsel. *Id.* at 1007-1008. The decrees are vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

BERRY, J. (dissenting). With a great deal of respect for the thoughtful analysis in the majority decision, I am compelled to dissent.

Chief Justice Hennessey wrote in *McIntyre* v. *Associates Fin. Servs. Co. of Mass.*, 367 Mass. 708, 712 (1975):

> "It has been said, in substance, that three factors should be considered in determining whether a new rule is to be retroactive, viz.: (1) whether a new principle has been established whose resolution was not clearly foreshadowed, (2) whether retroactive application will further the rule, and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity. *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 106-107 (1971). See also *Linkletter* v. *Walker*, 381 U.S. 618, 628 (1965)."

I believe that retroactive application in this case fails under two of these factors: to vacate the decrees in this case will not further the rule of right to counsel in an adoption proceeding involving the termination of a biological parent's rights as announced in *Adoption of Meaghan*, 461 Mass. 1006 (2012), because that right to counsel will be applied prospectively. Thus, retroactive application in this case does not "further the rule." *McIntyre, supra.* In addition, to vacate the decrees in this case will yield an inequitable result, will be an injustice to the mother, stepfather, and children who have melded in a new life together, and will bring the hardship of an unnecessary retrial. *Ibid.*

Adoption of Gabe.

"Traditionally, exceptions to the general rule of retroactivity have arisen when judicial rulings have altered rights in Massachusetts contract and property law where issues of reliance might impose hardship on unsuspecting parties." *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 657 (1996). In this case, the rights adjudicated and the resulting decrees should be viewed as such an exception in order to avoid "impos[ing] hardship on unsuspecting parties," just as, and indeed beyond, that which might arise out of contract and property issues. On this point, I am dubious of the majority's conclusion that the father did not waive his right to counsel because he did not know of the right,[1] leaving the judge and the family petitioners unsuspecting of the issue. There are "rare exceptions" to full retroactivity. This case is one, I believe. Hence, I dissent.

---

[1]The majority states that the "record does not show the father's awareness of his right to counsel," and therefore there could not be a waiver. *Ante* at 293.